**Miller RHOADES, dba Rhoades Truck Lines, Appellant,**

**v.**

**PRUDENTIAL LEASING CORPORATION, Appellee.**

No. 11470.

Court of Civil Appeals of Texas.

Austin.

March 1, 1967.

Rehearing Denied March 22, 1967.

Procter & Jones, James H. Granger, Austin, for appellant.

Graves, Dougherty, Gee, Hearon, Moody & Garwood, William L. Garwood, Austin, for appellee.

PHILLIPS, Chief Justice.

This suit was brought by appellee, Prudential Leasing Corporation, against appellant Miller Rhoades to recover damages for breach of a lease contract by which certain items of motor transportation equipment had been leased to Rhoades. Rhoades eventually filed a cross-action for money damages for alleged misrepresentations which he claimed induced him to enter into the transaction. With respect to Prudential's action against Rhoades, a partial summary judgment was entered in Prudential's behalf on June 9, 1965, and final judgment in its behalf following subsequent trial on the merits of the issues remaining. On June 30, 1965, summary judgment was entered that Rhoades take nothing by his cross-action against Prudential.

We affirm.

Prudential's suit was commenced March 19, 1963, in Harris County, and was transferred, after plea of privilege hearing, to Travis County. Thereafter Prudential filed its First Amended Original Petition which alleged that on or about December 20, 1961, Executive Leasing Service (to whose rights in the premises Prudential later succeeded)

leased the equipment involved in this lawsuit to Rhoades. While Rhoades had possession of the equipment under the lease, a dispute arose between the parties which eventuated in Rhoades filing suit in March, 1962 against Executive Leasing Service in Travis County (styled Rhoades v. Executive Leasing Service, No. 125,839 in the 126th District Court.)

This suit alleged fraudulent misrepresentations by Executive, and sought, among other things, abatement of the rentals, or alternatively cancellation and recision of the lease transaction.

Executive answered and prayed that Rhoades be required to perform in accordance with the terms of the written lease.

Thereafter Executive and Rhoades agreed to settle the lawsuit and the respective obligations of the parties and in the pursuance of such settlement the suit in question was dismissed by order of the court on June 22, 1962. As a part of the settlement Rhoades continued to hold the equipment under lease from Executive, but the lease terms were modified.

Subsequently, Prudential succeeded to Executive's rights in the premises. Prudential brought suit alleging that Rhoades breached the modified lease agreement by failing to meet the payments therein called for to be made on November 11 and December 11, 1962, hence the present suit.

In February, 1965, Prudential filed its motion for summary judgment and supporting affidavit. At this stage of the proceedings the only pleadings filed by Rhoades constituted a general denial and a plea of privilege. Thereafter, Rhoades filed his "Reply to Motion for Summary Judgment" and later his "First Amended Original Answer" including a cross-action. Rhoades took the position that although he had purported to sell the equipment in question to Executive and lease it back from them in December, 1961, that such transaction was not genuine and was not what it purported to be, but that rather the transaction was

really "a loan of money with the equipment acting as security" and that the same "was usurious under the law in that the same provided for more than 10% interest per annum on said loan" and was hence "void." Rhoades also claimed fraud on the ground that it was represented to him that the transaction "would be recognized as true leases by the Internal Revenue Service," with the result that he could deduct the payments as "rent." Rhoades further pleaded that at the time of the defaults made the basis of Prudential's suit (i. e., November and December, 1962) he settled all disputes regarding the transaction with Prudential by delivering all the equipment to Houston so that another party (one Al Craig) could take it over. The last paragraph of Rhoades' amended answer filed March 31, 1965, constituted a cross-action for $150,000 money damages allegedly suffered by virtue of the claimed misrepresentation that the transaction was a true lease, with the payments thereunder being deductible as rent.

Prudential then filed its "Answer to Defendant's Reply to Motion for Summary Judgment," which contained objections and exceptions to the form and substance of the matters sought to be set up in the reply and also filed its "First Supplemental Petition and Original Answer to the First Amended Original Answer and Cross-Action" of Rhoades. In this pleading plaintiff pled that the disposition of the former lawsuit (Cause No. 125,839) and the settlement made in connection with it, operated to defeat Rhoades' asserted defenses of usury and misrepresentation by reason of the doctrines of "estoppel, estoppel by judgment, collateral estoppel, res judicata, waiver, accord and satisfaction and compromise and settlement." The supplemental petition also contained a general denial. For answer to Rhoades' cross-action, Prudential pled the same matters, namely denial and estoppel, estoppel by judgment, collateral estoppel, res judicata, waiver, accord and satisfaction, and compromise and settlement, and in addition pled the two and four year statutes of limitation. Prudential also filed further

affidavits in support of its motion for summary judgment, these affidavits including one containing certified copies of the pleadings in the previous case and one as to the testimony given on the hearing on the previous lawsuit.

Thereafter the court heard Prudential's Motion for Summary Judgment and granted Prudential partial summary judgment.

Thereafter, Prudential filed a motion for summary judgment on Rhoades' cross-action against it. This motion was based on the same grounds as its Motion for Summary Judgment on its action against Rhoades, and on the additional ground of limitation. Following another hearing, Prudential's Motion for Summary Judgment that Rhoades take nothing by his cross-action was granted.

Appellant Rhoades is before this Court on four points of error, the first two briefed together being: the error of the trial court in partially granting appellee's motion for summary judgment because there were genuine issues of material fact raised by the pleadings and affidavits filed in this cause, which fact issues could not be disposed of by summary proceedings but required determination by a jury; the error of the trial court in granting appellee's motion for summary judgment and ordering that appellant take nothing by his cross-action, for the reason that there were genuine issues of material fact raised by the pleadings and affidavits filed in this cause.

We overrule these points.

As stated above, appellee Prudential contended that there was a leasing contract between the parties to this suit and that appellant Rhoades had breached this contract. Rhoades contends that the contract was not a lease as it purported to be but was actually a usurious loan agreement and was therefore void, that if he had been induced to enter into said contract by the misrepresentations of appellee, and the contract was therefore void or voidable; that he had also filed his cross-action for damages incurred

as a result of this transaction which he would not have entered into except for appellee's fraudulent representations.

■ We hold that appellant was barred from asserting the abovementioned defenses to appellee's suit on the contract by reason of the judgment entered in the original suit between Rhoades and Executive Leasing Service (Cause No. 125,839).

Appellant's position seems to be that the abovementioned judgment was nothing more than a dismissal that adjudicated nothing, that the moving party was entitled to such at any time, that the dismissal was without prejudice and that for all practical purposes adjudicated nothing more than had he taken a nonsuit.

We cannot agree with this position. At the conclusion of the trial in the first suit, the parties announced to the court that they had settled their controversy and in open court stated the terms of the settlement and the modifications to be made in the lease. The lease agreement making these modifications recites that it is in settlement of the earlier suit, "the parties hereto having agreed to submit to the court for its recommendation the issues here involved."

The motion to dismiss filed in the previous lawsuit specifically states that it is filed because "the points in controversy between plaintiff and defendant which were the basis of this lawsuit have been settled to the satisfaction of the parties herein" and "it is further agreed by the parties hereto that the costs of court will be shared equally."

The order of dismissal of the previous lawsuit specifically states that it is granting the motion for dismissal and is signed not only by the court but also by the attorneys for both parties, approved as to form and substance.

The original lease, and the lease as modified in connection with the settlement of the earlier lawsuit, are both in evidence. Also, the term and rate of the initial lease

are shown by Rhoades' testimony at the previous lawsuit. It is undisputed that both leases cover the exact same vehicles and that Rhoades never surrendered possession of any of the vehicles between the time of the execution of the initial lease and the time subsequent to the settlement of the prior lawsuit and the execution of the lease amendments in connection therewith.

■ Accordingly, these undisputed facts evoke the rule that a judgment of dismissal entered by agreement of the parties in pursuance of a compromise, or settlement of a controversy, becomes a judgment on the merits. See Stephenson v. Gaines, 298 S.W. 401 (Tex.Comm'n App.1927); Van Cleave v. Bell Oil & Gas Co., 102 S.W.2d 1103 (Tex.Civ.App. Fort Worth 1937, err. dism.). That such judgment is conclusive, not only on the matters actually raised and litigated but also is conclusive on every other matter which the parties might have litigated and had decided as an incident to or essentially connected with the subject matter of the litigation. Commonwealth of Massachusetts v. Davis, 140 Tex. 398, 168 S.W.2d 216 (1942).

■ We cannot agree with appellant's contention that in the previous lawsuit a plea of privilege was filed and not disposed of and that hence in the previous action the trial court had no jurisdiction, its judgment was void, and accordingly cannot be made the basis of a plea of res judicata. Parties of record who are under no disability and are suing or defending for themselves alone may agree at any time to the dismissal of the action or defense, with or without prejudice, for they have the absolute control of the litigation at every stage of the proceeding. 24 Am.Jur.2d, sec. 7, page 8.

As was stated above, the court partially granted appellee's motion for summary judgment. In this connection appellant sought to show that appellee had fraudulently induced him to enter into the abovementioned contract by claiming that the rent paid for the truck leases in question was a

deductible item under the Federal Income Taxes when in fact it was not.

■ We hold that the trial court was correct in his ruling for the reasons set out above with respect to res judicata and for the additional reason that appellant's cross-action was barred by the two-year statute of limitations. Vernon's Ann.Tex.Rev.Civ. Stat. Art. 5526. This cross-action was not filed until March 31, 1965 wherein appellant sought money damages for the alleged misrepresentations described above. Since it is not disputed that appellant's cause of action for the alleged misrepresentation accrued more than two years prior to March 31, 1965 when such cause was first filed, it is evident that the cross-action was barred by limitations. Appellant's cross-action was for money damages, and was not an attempt to minimize plaintiff's recovery, nor an action for or a defense of rescission or cancellation. Further, it was based on alleged fraudulent oral misrepresentations. 37 Tex. Jur.2d, Limitation of Actions, Secs. 48 and 50. Limitations ran up until the time of filing of this cross-action. Causeway Investment Co. v. Nass, 131 Tex. 12, 111 S.W.2d 703 (1938).

Appellant's point of error number three is the error of the trial court in refusing to permit appellant to present evidence and elicit testimony concerning misrepresentations made by appellee which induced appellant to enter into the subject transaction, and further erred in refusing to permit appellant to present evidence and elicit testimony concerning the nature of said transaction.

We overrule this point.

■ Appellant complains that in addition to erroneously granting appellee's partial motion for summary judgment, the court further erred in refusing to permit appellant to present evidence and elicit testimony as to whether the leasing transaction described above was in fact a usurious loan and the above described alleged misrepresentations on the part of the appellee which

induced appellant to enter into the lease agreement.

This evidence was properly excluded as it was immaterial to the suit under the view that we have taken here.

Appellant's fourth point of error is that of the trial court in overruling appellant's exception to special issue No. 3 of the court's charge, and also erred in refusing to submit to the jury appellant's requested instruction on said issue.

We overrule this point.

Appellant contends that appellee had agreed to release appellant from his obligations under the lease upon the giving of certain promises, and that appellee agreed to accept the terms of said promises in complete settlement and satisfaction of the controversy between the parties concerning said agreement.

Appellant requested that the following special issue be submitted to the jury:

"Do you find from a preponderance of the evidence that Prudential Leasing Corporation reached an agreement by which the defendant Rhoades was discharged from his obligation under the 1962 lease by *giving* the promises set forth in the preceding Special Issue No. ——, if you have found they were made." (Emphasis added.)

The trial court refused to give this special instruction and gave in lieu thereof the following instruction:

"Special Issue No. 3:

Do you find from a preponderance of the evidence that Prudential Leasing Corporation and Miller Rhoades reached an agreement prior to December 20, 1962 by which the defendant Rhoades was to discharge his obligation under the 1962 lease by *performing* the promises set forth in the preceding special issue number 2, if you have found they were made?" (Emphasis added.)

Special Issue No. 3 was answered by the jury in the negative.

Appellant timely objected to this submission pointing out in effect that such special issue placed a more onerous burden upon appellant than was appropriate under the pleadings, evidence and the law.

 After reviewing the record, we hold that the issue submitted by the court was raised by the pleadings and the evidence in the case. Texas Rules of Civil Procedure, rule 277. Here the emphasis was on an agreement to perform. Note appellant's answers to the following questions:

"Q  If I understand you then, in your conversation with them concerning this settlement, you didn't expect to be released to the extent of not having to lend your personal support by way of endorsement of Craig's notes. You knew that you would have to lend support to his note by endorsing his note. Is that correct?

A  Yes, Sir, I was more than willing."

then again:

"Q  Now, Mr. Rhoades, I want to see if I can understand what your testimony is about the deal that you say you had with Bob McNair. Were you going to endorse a note as part of that deal? Is that what you have testified to, that a part of that deal was that you were going to endorse a note?

A  I told Bob McNair if he would put the lease in Al Craig's name and let him sign the lease, I would personally endorse a note for Al Craig for the amount of money.

\*   \*   \*   \*   \*   \*

He said part of the deal. I volunteered, told him I would do it. Now, he didn't write it up.

Q  Well, did you understand that that was part of the deal or not? Now,

that is a simple enough question, Mr. Rhoades?

A  Yes, sir, I was going to do it."

We affirm the judgment of the trial court.

Affirmed.