METROMEDIA LONG DISTANCE, INC., formerly Long Distance Services, ("LDS") Inc., now Communications Services, Inc., Appellants,

v.

Robert H. HUGHES, Johnnie B. Rogers, Gary Scott and Lyn Noble Hawthorne, Appellees.

No. 04-90-00449-CV.

Court of Appeals of Texas, San Antonio.

June 19, 1991.

Rehearing Denied July 12, 1991.

Karen A. Angelini, Nissa A. Mykleby, Brock & Mathis, P.C., San Antonio, Philip P. Sudan, Jr., Jamie K. Baker, Ryan & Sudan, Houston, for appellants.

Dan Pozza, Jack Pasqual, Pasqual & Heinrichs, San Antonio, for appellees.

Before CHAPA, BIERY and CARR, JJ.

## OPINION

BIERY, Justice.

This appeal concerns the asserted rights of an indemnitor to intervene in order to defend the indemnitees and itself from potential liability.

In 1984, Robert H. Hughes and Johnnie B. Rogers, former legal counsel and investors of LDS,[1] filed suit against Gary Scott, Lyn Hawthorne, and LDS as well as against other parties not involved in this appeal.[2] The defendants had negotiated with Hughes and Rogers for the repurchase by the corporation of Hughes' and Rogers' shares of stock. During these negotiations, Hughes and Rogers allege that the defendants made misrepresentations concerning the value of the LDS stock and the true income of LDS, both before and at the time of sale.[3] The misrepresentations allegedly lead Hughes and Rogers to sell their stock for less than the true fair market value. The defendants were said to have acted willfully and intentionally in concealing information from the plaintiffs and to have breached a fiduciary relationship. There were also allegations of negligent misrepresentation and gross negligence. Metromedia settled with the plaintiffs for $150,000 and was dismissed from the case.[4] The plaintiffs later amended their petition, shortly before trial alleging only negligence in the failure to advise of certain financial decisions resulting in their sale of stock prior to the entire sale of the

1. LDS was originally set up as a partnership and for payment of legal services, counsel was given a 20% interest in the partnership. The individual interest received was 6.67%. LDS was later incorporated and the percentage of ownership was maintained as in the partnership. Hughes was given 95 shares of stock and Rogers given 94 shares of stock. In addition to legal services, counsel also lobbied for LDS. LDS was subsequently purchased by Metromedia and is now Communications Services, Inc.

2. The defendants Scott and Hawthorne were officers and directors of LDS.

3. It was alleged that the defendants informed Hughes and Rogers that if they would not sell their stock back to the corporation, they would be required to sign as personal guarantors on a corporate note in excess of $1,000,000. What they were not allegedly told, was that the corporation had "salaries" (disguised dividends) in excess of $528,000 available to pay back any indebtedness incurred by the corporation for any legitimate purpose.

4. A question arises as to whether Metromedia may intervene because it was an original party to the litigation. Intervention is defined as a mechanism whereby one "not an original party to pending legal proceedings becomes a party thereto for the protection of some right or interest alleged by him to be affected by such proceedings ..." 1 R. McDONALD, TEXAS CIVIL PRACTICE IN DISTRICT AND COUNTY COURTS § 3.46 (rev. 1981). In *McCord v. Watts*, 777 S.W.2d 809, 811 (Tex.App.—Austin 1989, no writ), the court stated that anyone may intervene in a legal proceeding to which he is not *originally* a party in order to protect a right or interest which he has and which will be affected by the litigation. (Emphasis added.) However, in the *McCord* case, the parties seeking to intervene were the grandparents of the child involved in a custody dispute between the divorcing parents. In a case somewhat analogous to the situation in the case before us, the court held that the trial court did not abuse its discretion in allowing intervention even though the intervenors had settled with the defendant. *Hastie v. Rodriguez*, 716 S.W.2d 675, 676 (Tex. App.—Corpus Christi 1986, writ ref'd n.r.e.). The intervenors were the parents of the deceased and had signed a release containing an indemnity clause with the defendants. The plaintiff filed a motion to dismiss the intervention because of the parents' settlement with the defendant. The court found that the intervenors still had an interest by way of the indemnity clause. *Id.*

LDS stock to Metromedia. Approximately four years later and shortly before trial, Scott and Hawthorne requested that Metromedia defend them or in the alternative, be responsible for legal fees and expenses incurred in defending the suit and any amount for which Scott and Hawthorne would be found liable under simple negligence.[5] The request came a few days before the non-jury trial setting. Metromedia responded by filing a plea in intervention which the court struck upon motions to strike filed by the plaintiffs; Hughes and Rogers, and by the defendants, Scott and Hawthorne. Thereafter, Hughes and Rogers filed a motion to sever their cause of action against Scott and Hawthorne.[6] Six days after the severance was granted, Metromedia filed its amended plea in intervention alleging collusion between the plaintiffs and defendants in that Metromedia was told about a "secret agreement" between the plaintiffs and defendants. Metromedia contends that the agreement was for the parties to proceed with a non-jury trial, obtain a "friendly" judgment, and seek recovery from Metromedia as plaintiffs would not seek to collect the judgment against the defendants in exchange for the defendants transferring their right of indemnification from Metromedia to the plaintiffs. Metromedia also alleged, as it did in the original plea in intervention, that it could raise defenses which the defendants no longer chose to raise. The defendants filed only a general denial and dropped their affirmative defenses and counterclaims after plaintiffs amended their petition to include only allegations of simple negligence.[7] Again, both the plaintiffs and defendants opposed the intervention. At the hearing held by a different trial judge, defendants' counsel stated that

---

**5.** Counsel for LDS received a letter by facsimile transmission on September 25, 1989, at 4:45 p.m. which provided in part:

> In 1984, the three lawyers sued Scott and Hawthorne along with LDS, Inc. and others in the captioned case. Herman is claiming fraud and negligence arising out of the purchase of the partnership's stock by LDS. Scott and Hawthorne are the only remaining defendants, due to the settlement of LDS, Mike Adkins and Terry Gould with the plaintiffs. Each of the plaintiffs were paid $100,000 and released from any liability which they had to LDS arising out of their association with the company. The settlement, which was made without the knowledge or approval of Scott and Hawthorne, has enabled Herman to continue pursuing his spurious lawsuit against Scott and Hawthorne.... Trial is set for the week of October 2, 1989. Despite repeated requests by Scott and Hawthorne that you assist in the defense of this case, LDS has failed to respond. We again demand that you pay us for the attorneys fees and expenses incurred to date and that you pay for the attorneys fees and expenses through finalization of this matter....
>
> Enclosed is a copy of the Third Amended Petition of Robert Hughes and Johnnie Rogers. As you can see, they have dropped all of their claims *except simple negligence.* In return, Scott and Hawthorne have dropped their counterclaims against Hughes and Rogers. If we lose that suit without the assistance of LDS in either settling with them or paying the expenses and attorneys fees, we shall hold LDS accountable under the appropriate LDS indemnification by-laws and the Texas business statutes.... They are willing to settle

> their lawsuit for $1.25 million. While we are confident that we can win the lawsuit brought by your attorney, Timothy J. Herman, we are concerned about the negligence suit by Hughes and Rogers.
>
> Please notify your insurance carriers who may cover the costs of suit and liability, if any, for simple negligence. If you do not agree to assist in our defense or in a settlement, the entire sum of Scott and Hawthorne's attorneys fees will be sought in a suit for indemnification.... That means when Scott and Hawthorne are exonerated in this case, LDS will absolutely liable [sic] for at least $400,000 under the LDS by-laws.... Furthermore, if Scott and Hawthorne are found liable to plaintiffs for simple negligence, all of their liability passes through to LDS. That could be more than $4 million.

**6.** The defendants Scott and Hawthorne filed a *motion to join Timothy J. Herman as an involuntary plaintiff* which the court granted. Hughes and Rogers then filed a motion to sever their causes of action against Hawthorne and Scott because these claims had been narrowed to simple acts of negligence whereas Herman's claims involved complex questions of law and fact. In addition, Scott and Hawthorne had counterclaims pending against Herman which they did not have pending against Roger and Hughes. The court granted the severance.

**7.** The indemnification by the corporation of its officers and directors was apparently for simple negligence only, e.g. the more usual situation where an officer or director is involved in an automobile accident while operating a company car.

whatever Metromedia's allegations were concerning the alleged conspiracy, these allegations were contained in a new cause of action for declaratory relief which Metromedia had filed in Montgomery County. The court struck the amended plea in intervention and thereafter, the case proceeded to trial wherein a third judge found the plaintiffs were each entitled to recovery of $2.3 million from defendant Scott. The statement of facts for the brief non-jury trial consists of forty-three pages. Metromedia, apparently fearful that it may be responsible for payment of the $4.6 million judgment under the indemnity clause set forth in the LDS' by-laws and no longer able to assert the defenses it claims it and Scott had, files this appeal.[8]

In its sole point of error, Metromedia asserts that it should have been allowed to intervene. We agree.

■ Rule 60 of the Texas Rules of Civil Procedure allows parties to intervene subject to being stricken by the court for sufficient cause. TEX.R.CIV.P. 60. A person or entity is given the right to intervene if it could have brought the same action, or any part thereof on its own or, if the action would have been brought against it, it would be able to defeat recovery or some part thereof. *Guaranty Fed. v. Horseshoe Operating*, 793 S.W.2d 652, 657 (Tex.1990); *Inter–Continental Corp. v. Moody*, 411 S.W.2d 578, 589 (Tex.Civ.App.—Houston [1st Dist.] 1966, writ ref'd n.r.e.). The intervenor's interest may be legal or equitable. *Moody*, 411 S.W.2d at 589. The

trial court is given broad discretion in determining whether the intervention should be stricken, but it is an abuse of discretion to strike a plea in intervention if (1) the intervenor meets the above criterion, (2) the intervention will not complicate the case by an excessive multiplication of the issues, and (3) the intervention is almost essential to effectively protect the intervenor's interest. *Guaranty Fed.*, 793 S.W.2d at 657.

■ In both pleas, Metromedia asserted three grounds on which it could defeat recovery in whole or in part.[9] The amended plea also contained the allegation that the parties had entered into a secret agreement. The trial court may determine the party's justiciable interest on the basis of the sufficiency of the petition in intervention. *McCord v. Watts*, 777 S.W.2d 809, 812 (Tex.App.—Austin 1989, no writ). The sufficiency of the petition is tested by its *allegations of fact* construed in conjunction with the allegations of fact set out in the pleadings of those persons resisting the intervention. *Rogers v. Searle*, 533 S.W.2d 440, 442 (Tex.Civ.App.—Corpus Christi 1976, no writ) (emphasis added). In the first motion to strike the intervention, it was alleged that LDS was not a proper party because it refused to defend and indemnify the defendants, and the intervention would cause prejudice or undue delay. We note again, however, that the demand for indemnity came only a few days before the trial setting.[10] The motion to strike the

---

**8.** A suit for indemnification has been filed and is pending in federal district court. *Robert H. Hughes, Johnnie B. Rogers, and Gary Scott v. Communications Services, Inc.,* Cause No. SA–90–CA–0860 (Western District of Texas, San Antonio Division).

**9.** Metromedia asserted the following defenses: (1) the plaintiffs' claims are barred by the proscription against issuance of stock for future services as the plaintiffs were acting as the legal counsel for LDS; (2) the repurchase of the stock by LDS was in violation of article 2.03 of the Texas Business Corporation Act and as legal counsel, plaintiffs were in a position to know that the repurchase violated Texas law; and (3) plaintiffs are estopped to assert their causes of action because at the time of the transaction, plaintiffs were general counsel for LDS and owed LDS a fiduciary duty.

**10.** Plaintiffs contend that Metromedia's liability under the indemnification provision of the by-laws for simple negligence was present in the pleadings at all times under the allegations of negligent misrepresentation and gross negligence. Negligent misrepresentation, however, constitutes a specie of remedial fraud in Texas and is recognized as a separate and independent tort cause of action. *Rosenthal v. Blum*, 529 S.W.2d 102, 104 (Tex.Civ.App.—Waco 1975, writ ref'd n.r.e.); J. HUFFAKER, *Fraud and Misrepresentation*, in 2 TEXAS TORTS AND REMEDIES § 44.03[2] (J. Edgar & J. Sales eds. 1991). As to whether gross negligence is a separate cause of action from that of simple negligence, there is a split of authority. *Compare Olin Corp. v. Dyson*, 678 S.W.2d 650, 659 (Tex.App.—Houston [14th Dist.] 1984), *rev'd on other grounds*, 692 S.W.2d 456 (1985) (gross negligence and

amended plea in intervention recited that the first motion had been stricken so this and all subsequent motions should be stricken as well.

At the second hearing, Metromedia told the court about the agreement wherein both parties amended their pleadings at the last minute and dropped the jury demand. Metromedia further explained that they had the testimony of two lawyers who were told that the plan was for a friendly judgment to be entered for millions of dollars and another suit to follow in which Metromedia would be sued based upon the friendly judgment. Metromedia also asserted that it was ready and willing to go to trial and would not seek to further delay the proceedings and was not demanding a jury. The court struck the amended plea in December 1989, and the trial between the parties was held in April 1990. Under these facts, we find that Metromedia meets the first element of the above test (if the action had been brought against it, it would be able to defeat recovery). We also find that the intervention will not complicate the case with an excessive multiplication of issues and is almost essential to effectively protect Metromedia's interest. *See Fleming v. St. Louis Southwestern Ry. Co.,* 13 S.W.2d 440, 442 (Tex.Civ.App.—El Paso 1929, no writ) (proper for indemnitor to intervene and set up defenses against liability on indemnity bond to railway; settle rights of all parties in one suit). The fact that Metromedia has filed suit for declaratory relief in another county does not prevent intervention simply because it may have another means to protect its interest. If the court has jurisdiction over the matter, ordering the parties to take their lawsuit elsewhere is not one of the alternatives open to the court in disposing of the intervention. *Apparel Contractors, Inc. v. Vantage Properties, Inc.,* 620 S.W.2d 666, 668 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.). Additionally, interventions are favored to avoid a multiplicity of suits. *Inter–Continental Corp. v. Moody,* 411 S.W.2d 578, 589 (Tex.Civ.App.—Houston [1st Dist.] 1966, writ ref'd n.r.e.).

In response to Metromedia's abuse of *discretion* point, appellees also assert that the trial court did not abuse its discretion in striking the amended plea in intervention because the doctrines of res judicata and collateral estoppel prevent Metromedia from further litigating the intervention issues. Appellees argue that the order striking the first plea in intervention became final and no appeal was taken from that order or judgment.[11] Appellees further contend that there is no material difference between the two pleadings except an additional allegation of civil conspiracy in the amended plea, but the merits as to whether the intervention should be stricken did not change.

Metromedia contends that the order striking the plea in intervention was not final nor did the order of severance make the order final because the claims of Herman were still pending at the time severance was ordered.[12] In addition, the appel-

---

ordinary negligence two different causes of action) *with Trevino v. Lightning Laydown, Inc.,* 782 S.W.2d 946, 951 (Tex.App.—Austin 1990, writ denied) (disagree with *Dyson* that gross negligence separate and independent cause of action). Therefore, Metromedia may not have been aware of its responsibilities until the request for indemnification was made.

11. After the court struck the first plea, the court severed the causes of action against defendants Hawthorne and Scott from the claims of the involuntary plaintiff, Timothy Herman. The motion to sever was granted and appellees' *cause of action against Scott and Hawthorne* was ordered to proceed under cause number 84–CI–02090A. Herman's claims against Scott and Hawthorne remained pending under cause

number 84–CI–02090 which was resolved by a Stipulation of Dismissal with Prejudice signed by the attorneys for the parties.

12. Metromedia recognizes that Herman entered into a Stipulation of Dismissal with Prejudice which settled the remaining claims between himself and Scott and Hawthorne. However, there is no court order approving the settlement or a final judgment, and the record before this court is devoid of any indication to the contrary. Therefore, Metromedia asserts there is no judgment subject to collateral attack and no bar of the amended plea in intervention under the doctrine of res judicata. *Buffalo Bag v. Joachim,* 704 S.W.2d 482, 483 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (judgment rendered when decision officially announced

lees did not bring the issues of res judicata or collateral estoppel to the trial court's attention and did not seek to strike the amended plea in intervention on these grounds.

 It is settled law that an order dismissing or striking a petition in intervention may not be appealed by the intervenor before the rendition of a final judgment. *League of United Latin American Citizens v. Lo–Vaca Gathering Co.,* 527 S.W.2d 507, 508 (Tex.Civ.App.—San Antonio 1975, writ ref'd n.r.e.), *cert. denied,* 425 U.S. 959, 96 S.Ct. 1739, 48 L.Ed.2d 203 (1976). In order to complain of a judgment on appeal, errors must be brought to the court's attention in some manner. *Intermarket U.S.A., Inc. v. C–E Natco,* 749 S.W.2d 603, 606 (Tex.App.—Houston [1st Dist.] 1988, writ denied). Res judicata and collateral estoppel are affirmative defenses which must be affirmatively pleaded. TEX.R.CIV.P. 94. A prior judgment is not res judicata as to matters that subsequently arise; res judicata does not prevent reexamination of the same question between the same parties where facts have changed or new facts arise which alter the rights or relations of the parties. *Hudspeth v. Hudspeth,* 673 S.W.2d 248, 252 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.). Based upon the fact that res judicata and collateral estoppel were not raised until appeal and Metromedia's assertion of new facts which arose after the first plea in intervention, we hold that the doctrines of res judicata and collateral estoppel are inapplicable.

Accordingly, we hold that Metromedia is entitled to its day in court pursuant to its plea and amended plea in intervention. The judgment of the trial court is reversed and the cause is remanded for new trial.

---

either orally or by memorandum). Plaintiffs rely on *Lubbock Mfg. Co. v. International Harvester Co.,* 584 S.W.2d 908, 911 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.) for the proposition that a judgment of dismissal constitutes a final judgment. The *Lubbock Mfg.* decision relies on *Rhoades v. Prudential Leasing Corp.,* 413 S.W.2d 404 (Tex.Civ.App.—Austin 1967, no writ) for support of its statement, but in *Rhoades,* the court found the order of dismissal was signed not only by the court but also by the attorneys for both parties. *Rhoades,* 413 S.W.2d at 407.