Hensley v. Receiver 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 



NO. 3-92-002-CV;


NO. 3-92-003-CV;


AND


NO. 3-92-004-CV 




NELSON HENSLEY, CHAPTER 7 TRUSTEE FOR


GEORGE C. AND ANGELA McINGVALE,


 APPELLANT


vs.




RECEIVER OF MOBILE INSURANCE COMPANY AND THE STATE OF TEXAS;


RECEIVER OF MOBILE COUNTY MUTUAL INSURANCE COMPANY


AND THE STATE OF TEXAS;


AND


RECEIVER OF McINGVALE ASSOCIATES GENERAL AGENCY, INC.


AND THE STATE OF TEXAS, 



 APPELLEES


 



FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT



NOS. 237,782; 237,783; & 237,784; HONORABLE F. SCOTT McCOWN, JUDGE 


 



 Nelson Hensley, the trustee in bankruptcy for the estate of George C. and Angela
McIngvale, appeals three separate district-court orders striking McIngvale's petitions to intervene
in the ongoing receivership proceedings of Mobile Insurance Company ("Mobile"), Mobile
County Mutual Insurance Company ("County Mutual"), and McIngvale Associates General
Agency, Inc. ("MAGA"). (1) Concluding that the district court did not abuse its discretion in
striking McIngvale's petitions in intervention, we will affirm the orders.


BACKGROUND


 The salient facts underlying these cases are undisputed. Before 1974, McIngvale
was the controlling director of three related businesses--Mobile and County Mutual, both insurance
companies, and MAGA, a managing general agency. In 1974 McIngvale sold his interest in the
three companies to an entity called the Louisiana Group. Following the Louisiana Group's
takeover, the financial condition of Mobile, County Mutual, and MAGA deteriorated, and state
regulatory authorities threatened to take action. At the Louisiana Group's request, McIngvale
sought to repurchase his interest in the three companies, subject to the approval of the Texas
Commissioner of Insurance (the "Commissioner"). The Louisiana Group also persuaded
McIngvale to borrow capital to infuse into the financially troubled insurance companies and
thereby allay regulators' concerns. McIngvale allegedly borrowed $6,000,000, which he
transferred in equal portions to the surplus accounts of Mobile and County Mutual. McIngvale
apparently incurred this personal liability thinking that he would soon own and control the three
companies as he had before.

 The Commissioner, however, never approved the transfer of Mobile, County
Mutual, and MAGA. Indeed, in August 1975 the Commissioner requested the attorney general
to institute quo warranto proceedings as to the three businesses. The result of the quo warranto
proceedings was to put all three businesses into receivership and revoke the charters of the
insurance companies.

 In December 1975, bankruptcy proceedings were separately instituted against
MAGA and McIngvale in the United States Bankruptcy Court for the Northern District of Texas. 
These proceedings were brought under Chapter VII of the Bankruptcy Act of 1898, ch. 541, 30
Stat. 544 (1898) (repealed 1978), and Robin Phelan was appointed trustee to liquidate the estates. 
The separate estates were subsequently consolidated based on the bankruptcy court's determination
that MAGA was McIngvale's alter ego.

 The receiver of Mobile and County Mutual filed a claim against the bankruptcy
estates of MAGA and McIngvale; the bankruptcy court ultimately allowed the claim in the amount
of $5,553,699. By 1987, the bankruptcy trustee was nearing the final stages of liquidating and
distributing the remaining assets of the McIngvale and MAGA estates. On April 13, 1987, the
bankruptcy court ordered all assets of MAGA, other than cash equivalents, sold to the receiver
of Mobile and County Mutual in exchange for a $200,000 reduction of their claim. Noting that
"all assets of the bankrupt estate have been reduced to money and that there is no necessity for
further administration of the estates," on November 30, 1987, the bankruptcy court approved the
trustee's final report and accounting and ordered distribution of the estate's funds. On January
13, 1988, the trustee filed a "case status report" which stated the following:



 1. All assets have been liquidated.

 2. There is no property remaining to be sold.

 3. There is no pending litigation.

 4. There are no other unresolved matters.

 . . . . 

 6. Trustee is in the process of distribution of funds.


On July 19, 1988, the bankruptcy court entered an order discharging the trustee and closing the
estate.

 In September 1991, McIngvale filed his petitions in intervention in the receivership
proceedings. In the Mobile and County Mutual proceedings, McIngvale sought (1) a declaration
and foreclosure of equitable liens in the surplus assets of those businesses, based on "subordinated
debentures" he purports to hold as a result of his infusing $3,000,000 into each company; and (2)
based on his alleged status as sole shareholder and alter ego of MAGA, an accounting of all
intercompany transactions during the receiverships between Mobile and MAGA and between
County Mutual and MAGA. In the County Mutual proceeding, he also requested the revival and
reinstatement of County Mutual's charter and agency agreement with MAGA. In the MAGA
proceeding, McIngvale sought (1) declaratory relief and damages against the receiver for sums
McIngvale allegedly advanced MAGA and its subsidiaries; (2) dissolution of the receivership, the
reinstatement of all corporate licenses, and confirmation of the "efficacy" of the agency agreement
and management contract between County Mutual and MAGA; and (3) an accounting, transferring
title, control, and custody of MAGA from the receiver to McIngvale. McIngvale's petitions
reflect that he bases his interest in the receivership proceedings on his status as an individual
creditor of the insurance companies (as related to the surplus-debenture claims) and on his
ownership of stock in MAGA (the remaining claims).

 In November 1991, the receiver filed motions to strike McIngvale's petitions in
intervention. Following a hearing, the trial court granted the receiver's motions to strike with
signed orders on December 4, 1991. On appeal, McIngvale advances four points of error
complaining that the trial court abused its discretion by striking the petitions because (1)
McIngvale met the criteria for proper intervention; (2) the orders striking his petitions constituted
impermissible adjudications on the merits; (3) McIngvale's claims were not time-barred; and (4)
the receiver had no standing to urge the motions to strike.


DISCUSSION


 Before reaching the merits, we must address two threshold matters: (1) the
receiver's contention that McIngvale's claims have been mooted; and (2) McIngvale's argument
that the receiver lacked standing to challenge McIngvale's petitions in intervention.


Mootness

 On December 20, 1991, the district court issued closing orders in the three
receivership cases, which effectively terminated those proceedings. The receiver avers that
McIngvale's failure to directly appeal the closing orders precludes this Court from granting
efficacious relief in McIngvale's appeals of the district court's orders striking intervention. We
disagree. An order striking a petition in intervention is interlocutory, and an intervenor may not
appeal such an order before the rendition of a final judgment. Metromedia Long Distance, Inc.
v. Hughes, 810 S.W.2d 494, 499 (Tex. App.--San Antonio 1991, writ denied). Because the
closing orders below terminated the receiverships, we take them to be final, appealable judgments. 
McIngvale does not directly assail the closing orders. However, by attacking the orders striking
his petitions in intervention, he implicitly contends that the closing orders are premised on the
district court's error in depriving him of the substantial right to assert an interest in the surplus
of the receivership estates. In reviewing claims on appeal, appellate courts should construe points
of error liberally in order to adjudicate the issue. Williams v. Khalaf, 802 S.W.2d 651, 658 (Tex.
1990). We believe that appellate courts should likewise construe an appellant's prayer for relief
liberally so as to address the matter in issue. In all three appeals, McIngvale seeks reversal of the
district court's orders striking intervention so that he can assert his claims. Because such relief
requires reversal of the closing orders, we construe McIngvale's appeals to seek that relief
implicitly. Based on this determination, we reject the receiver's contention that entry of the
closing orders has mooted these appeals.

 The receiver further suggests that, because the distribution of the surplus of the
receivership estates has already begun, McIngvale is prevented from recovering any interest he
might have in that surplus. Regardless of whether a judgment has been superseded, it is not final
so long as an appeal is pending and, although it may be enforced by execution, payment of a fund
to one party pending appeal does not discharge liability to a different party whose claims may be
established after reversal. Apparel Contractors, Inc. v. Vantage Properties, Inc., 620 S.W.2d
666, 668 (Tex. Civ. App.--Dallas 1981, writ ref'd n.r.e.). Consequently, we conclude that the
distribution of estate assets does not affect the continued viability of the claims on appeal.


The Receiver's Standing

 By his fourth point of error in each appeal, McIngvale argues that the proceedings
in which he sought to intervene were quo warranto actions and that, consequently, the receiver
had no standing to assert the motions to strike. See Tex. Rev. Civ. Stat. Ann. art. 6253 (West
1970) (since repealed and codified at Tex. Civ. Prac. & Rem. Code Ann. § 66.002(c) (West
1986)) (only attorney general, or district or county attorney of proper district or county, either
on own motion or individual relator's request, may initiate quo warranto action). McIngvale
mischaracterizes the proceedings below. Although the attorney general did initiate quo warranto
proceedings against Mobile, County Mutual, and MAGA in 1975, McIngvale actually sought to
intervene in the receivership proceedings that followed the successful conclusion of the quo
warranto actions.

 In receivership proceedings, the receiver for a defendant insurance company holds
title to all property of that company, may sue and be sued, and is not bound by any action against
the delinquent insurer without being joined in the suit. See Tex. Ins. Code Ann. art. 21.18, §§
2(b), 3(h), 4(f),(h) (West Supp. 1993). Because the statute demonstrates that the receiver was a
proper party to the claims McIngvale asserted against Mobile, County Mutual, and MAGA, we
conclude the receiver had standing to challenge the intervention. Therefore, we overrule
McIngvale's fourth point of error in each cause.


The Standard of Review

 Anyone may intervene in a legal proceeding to which he is not originally a party,
"subject to being stricken out by the court for sufficient cause on the motion of any party." Tex.
R. Civ. P. 60. A motion to strike a petition in intervention is addressed to the sound discretion
of the trial court. Mendez v. Brewer, 626 S.W.2d 498, 499 (Tex. 1982). The supreme court has
stated that a person has the right to intervene if the intervenor could have brought the same action,
or any part thereof, in his own name. Guaranty Fed. Sav. Bank v. Horseshoe Operating Co., 793
S.W.2d 652, 657 (Tex. 1990). The intervenor's asserted interest may be legal or equitable. Id. 
Although a trial court has broad discretion in determining whether to strike a petition in
intervention, it is an abuse of discretion to do so if (1) the intervenor meets the above test; (2) the
intervention will not complicate the case by an excessive multiplication of the issues; and (3) the
intervention is almost essential to protect the intervenor's interest effectively. Id.

 The trial court may determine the intervenor's interest on the basis of the
sufficiency of the petition in intervention. McCord v. Watts, 777 S.W.2d 809, 812 (Tex.
App.--Austin 1989, no writ). The petition's sufficiency is tested by its allegations of fact on which
the right to intervene depends, and the court may, on the motion of an opposing party, strike the
petition if no sufficient interest is alleged. Id. The sufficiency of the facts alleged in the petition
should, however, also be construed along with the allegations of fact set forth in the other parties'
pleadings. Id. Consequently, in determining whether the trial court abused its discretion in
striking McIngvale's petitions in intervention, we shall consider the petitions and the receiver's
motions to strike, along with the exhibits attached to those motions.



McIngvale's Interest in the Receivership Proceedings

 Based on our review of the record presented, the district court did not abuse its
discretion by striking the petitions in intervention because McIngvale retained no interest that he
could assert against the receiver or the receivership estates. As we shall develop below, in the
course of the consolidated bankruptcy proceedings involving the McIngvale/MAGA estates,
McIngvale relinquished any interest that he possessed in MAGA, or that he might assert through
MAGA, to the bankruptcy trustee for the consolidated estate. The trustee, in turn, at the
bankruptcy court's direction, transferred all non-cash assets of MAGA to the receiver of Mobile
and County Mutual in consideration for the receiver's reduction of the claims against the MAGA
bankruptcy estate by $200,000.

 McIngvale maintains that he is a proper party to assert the various claims against
the receiver because the trustee in bankruptcy abandoned the claims to him by not administering
them during the bankruptcy proceedings. McIngvale principally relies on Bankruptcy Rule 608,
which provides that "[i]f the case is closed without administration of property of the estate that
has been scheduled, the property shall be deemed to have been abandoned with the approval of
the court." (2) (Emphasis added.) However, McIngvale's reliance on Rule 608 seems to undercut
his position rather than bolster it.

 In a liquidation proceeding conducted pursuant to chapter VII of the 1898
Bankruptcy Act, all tangible and intangible property is vested in the trustee. See Scharmer v.
Carrollton Mfg. Co., 525 F.2d 95, 98 (6th Cir. 1975). To assure that the trustee is fully informed
of the assets he was to administer and liquidate, the Act expressly required the debtor to file
detailed schedules identifying all assets. See 11 U.S.C. § 7a(8) (repealed 1978). Because all
assets are vested in the trustee at the commencement of the bankruptcy proceedings, they remain
part of the estate unless administered or abandoned. See Scharmer, 525 F.2d at 98. An asset
cannot be abandoned, however, unless the debtor has identified it in the schedule of assets. See
id. (citing First Nat'l Bank v. Lasater, 196 U.S. 115, 118 (1905)); see also Bankruptcy Rule 608;
Raley v. D. Sullivan & Co., 207 S.W. 906, 908 (Tex. Comm'n App. 1919, judgm't adopted). 
Consequently, to successfully assert a viable claim based on assets abandoned by the trustee,
McIngvale must first have scheduled those assets.

 We have searched the record in vain, however, for scheduled assets corresponding
to the two $3,000,000 surplus-debenture claims that McIngvale asserts against the receiver of
Mobile and County Mutual. The schedule of assets for McIngvale's personal estate reflects only
a claim against MAGA for $6,500,000, and a "claim against Gary Anderson, Herman Taylor, and
Chareaux Thibaut [the Louisiana Group]" in an unknown amount. There is no reference to any
claim against either Mobile or County Mutual.

 Similarly, MAGA's schedule of assets reveals no claims against Mobile or County
Mutual. However, MAGA's schedule of debts lists McIngvale individually as a creditor on a
$5,600,000 debenture. McIngvale contends that this scheduled debt of MAGA constitutes his
disclosure of the surplus-debenture claims he now asserts against Mobile and County Mutual. We
disagree. First, the debentures identified in MAGA's schedule represent a debt owed, not an
asset. Second, McIngvale stated in his petitions against Mobile and County Mutual that the
debentures supporting his claim were never reduced to writing; by contrast, MAGA's schedule
of debts explains that "[c]opies of the debentures and the resolution authorizing the issuance are
in the minute book." Finally, the amounts of the debenture claims asserted against Mobile and
County Mutual ($3,000,000 each) do not correspond to the amount of the debentures listed in
MAGA's schedule ($5,600,000). Based on this record, we do not believe that McIngvale
adequately identified the debenture claims against Mobile and County Mutual such that the trustee
could be deemed to have abandoned them.

 Moreover, even if we assume McIngvale properly scheduled the debenture claims,
we must nevertheless reject McIngvale's contention that the bankruptcy trustee abandoned assets. 
The linchpin of McIngvale's argument is that the trustee failed to administer the claims now
asserted in the receivership proceedings. However, the bankruptcy court's order approving the
compromise and settlement of Mobile and County Mutual's claims against McIngvale/MAGA,
the trustee's case status report, and the bankruptcy court's closing order reveal that all assets of
the consolidated estates were liquidated, all monies were distributed to secured and unsecured
creditors, and all non-cash equivalents were relinquished to the receiver of Mobile and County
Mutual to compromise a portion of the receiver's claims against McIngvale and MAGA. (3) The
record reveals that at the time of the closing, the McIngvale/MAGA estate was an empty vessel
containing no assets to be abandoned to the bankrupt. All assets had been either liquidated for
distribution to creditors or conveyed to the receiver as partial settlement of the allowed claims
asserted by Mobile and County Mutual. Nothing remained to be abandoned to McIngvale. By
all appearances, whatever vitality may attend the claims McIngvale urged in his petitions in
intervention, he personally retains no interest that he may assert. In the language of Guaranty
Federal, McIngvale is not entitled to bring the claims in his own name. Concluding that the trial
court's orders striking intervention cannot constitute an abuse of discretion because McIngvale has
no interest in the underlying actions, we overrule his first point of error in each cause.

 By his second point of error, McIngvale avers that the orders striking intervention
constitute "an improper adjudication on the merits of McIngvale's claim." We disagree. Without
reaching the merits of the claims asserted, the trial-court orders merely determine that McIngvale
has no personal interest in the merits of those claims. We overrule his second point of error in
each cause.

 Finally, by his third point of error, McIngvale argues that the trial court abused its
discretion in striking the petitions because McIngvale's claims were not barred by limitations. 
Having concluded that the trial court properly struck the petitions because McIngvale had no
interest in the claims asserted, we need not address this challenge to an alternative basis for the
trial court's orders.



CONCLUSION


 Having determined that the district court properly struck McIngvale's petitions in
intervention, we affirm the district court's final closing orders in the receivership proceedings.



 

 Bea Ann Smith, Justice

[Before Justices Powers, Aboussie and B. A. Smith; Justice Aboussie not participating]

Affirmed on All Causes

Filed: August 25, 1993

[Do Not Publish]
1. [1] About two months after the district court struck his petitions in intervention, McIngvale
and his wife filed for bankruptcy in the United States Bankruptcy Court for the Southern
District of Texas, Houston Division, Case No. 92-41833-H2-7. The McIngvales listed on
their bankruptcy estate's schedule of assets the claims presented in these appeals. 
Consequently, Hensley, having succeeded to McIngvale's interest in the causes of action, is
the proper party to assert the claims and arguments presented on appeal. See 9 Lawrence
King, Collier on Bankruptcy, ¶ 7017.4 at 7017-4 (15th ed. 1992). However, because
McIngvale instituted the suits below, and was the principal actor in the underlying events, for
simplicity's sake we shall refer to him throughout the discussion rather than to Hensley.
2. [2] Bankruptcy Rule 608, repealed in 1978, was codified at 11 U.S.C. § 554(c) (1988).
3. [3] Indeed, the trustee's amended application to distribute funds, dated December 8, 1987,
reflects that $10,000,000 in allowed claims against the McIngvale/MAGA bankruptcy estates
remained unpaid.