William Odie FREEMAN, Elvie Randolph Freeman, Myrtle Fay Mayfield and D.A. Freeman, Appellants,

v.

CHEROKEE WATER COMPANY, Appellee.

No. 06–99–00012–CV.

Court of Appeals of Texas, Texarkana.

Submitted Jan. 13, 2000.

Decided Feb. 1, 2000.

Jon K. Hudgens, Ross–Hudgens Attys., Longview, for appellants.

T. John Ward, Nancy M. Fuller, Brown McCarrol & Oaks Hartline, H.P. Smead, Jr., Smead, Anderson, Wilcox, Dunn, Longview, Ron Adkison, Wellborn, Houston, Adkison, Mann, Henderson, for appellee.

Before CORNELIUS, C.J., GRANT, J., and CHADICK, J., Retired, Sitting by Assignment.

## OPINION

Opinion by CORNELIUS, Chief Justice.

This is an appeal from a take-nothing summary judgment rendered against William Odie Freeman, Elvie Randolph Freeman, Myrtle Fay Mayfield, and D.A.

Freeman (the Freemans) on their counterclaims against Cherokee Water Company. The Freemans filed the counterclaims in a declaratory judgment action that Cherokee Water Company filed seeking to determine the meaning of a provision in a deed it had taken from the Freemans' predecessors in title. We affirm the summary judgment for the reasons hereafter stated.

In 1948, Cherokee instituted condemnation proceedings against the parents of the Freemans to acquire the title to a tract of land. The condemnees contested the condemnation proceedings and objected to the amount of compensation awarded by the commissioners. The case was ultimately settled, however, and the condemnees conveyed the land to Cherokee Water Company by deed in full settlement of the controversy. The deed to Cherokee contains a provision allowing the grantors and certain of their children "living or visiting with them" to go on and fish from the lake Cherokee proposed to build on the land it had acquired. The fishing rights provision states that the rights granted are "personal and not subject to sale or assignment." After the grantors in the deed died, a dispute arose between Cherokee and the Freemans, who are children of the grantors, concerning whether the fishing rights survived the deaths of the grantors and passed to the children. To resolve the dispute, Cherokee filed a declaratory judgment action asking the court to construe the "fishing rights" provision in the deed. The Freemans filed counterclaims in the declaratory judgment action, contending that Cherokee initially had no right to condemn the land, had fraudulently intended to use the land for private rather than public purposes, and had procured the deed by legal and factual fraud.

The trial court severed the issue of fishing rights from the counterclaims and rendered summary judgment against the Freemans on all of their claims. This appeal involves only the Freemans' counterclaims. The construction of the fishing rights provision is not before us.

The order granting summary judgment does not state the basis on which the judgment was granted. In that situation, we uphold the summary judgment if it can be sustained on any ground raised in Cherokee's motion. *Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex.1995). In its motion for summary judgment, Cherokee expressly asserted that summary judgment in its favor was justified on the basis that it had the lawful right to condemn the land and that the Freemans' counterclaims were barred as a matter of law by limitations and by res judicata.

The Freemans contend that summary judgment was improper because (1) the summary judgment evidence shows that Cherokee used the land for private rather than for public purposes, (2) limitations does not bar their counterclaims since the claims arise out of the same transaction or occurrence in dispute in Cherokee's declaratory judgment action, and (3) res judicata does not bar their counterclaims because the claims involve different matters than those settled in the condemnation suit.

In reviewing the propriety of the summary judgment, we follow the standards set out in *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546 (Tex.1985), and *Gibbs v. General Motors Corp.,* 450 S.W.2d 827 (Tex.1970). To sustain the summary judgment, Cherokee must have produced summary judgment evidence conclusively establishing at least one of its affirmative defenses or conclusively negating at least one essential element of the Freemans' claims. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex. 1979). We conclude that Cherokee conclusively established all three of the grounds of defense it raised in its motion.

All of the Freemans' counterclaims are barred by limitations, TEX. CIV. PRAC. & REM.CODE ANN. § 16.004 (Vernon Supp.2000), unless those counterclaims are preserved by the provisions of TEX. CIV.

PRAC. & REM.CODE ANN. § 16.069 (Vernon 1997). Section 16.069 provides:

> (a) If a counterclaim or cross claim arises out of the same transaction or occurrence that is the basis of an action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitations on the date the party's answer is required.
>
> (b) The counterclaim or cross claim must be filed not later than the 30th day after the date on which the party's answer is required.

For the counterclaims to have arisen out of the same transaction or occurrence as required by Section 16.069, the claims must have a logical relationship to the dispute that was involved in Cherokee's declaratory judgment action. *See Jack H. Brown & Co. v. Northwest Sign Co.*, 718 S.W.2d 397 (Tex.App.-Dallas 1986, writ ref'd n.r.e.) (construing the compulsory counterclaim rule). To be logically related, the essential facts on which the counterclaims are based should be significantly and logically relevant to both claims. *Id.* at 400.

The Freemans contend that the logical relationship test is satisfied because both Cherokee's declaratory judgment action and the counterclaims filed in this action involve the execution of the deed to the land that Cherokee acquired. We disagree. The matter in dispute in Cherokee's declaratory judgment action was not the procurement or the execution of the deed, but rather the interpretation of one provision in the deed: the paragraph granting fishing rights to the Freemans' parents. In no way did Cherokee's declaratory judgment action place in question the validity or the legality of the deed. Likewise, the Freemans' counterclaims in no way relate to the fishing rights, or any other interpretation of the deed. Indeed, the Freemans concede in their brief that their counterclaims are based entirely on the alleged fraudulent execution of the deed. Therefore, the counterclaims do not logically relate to Cherokee's action to construe the fishing rights provision of the deed. Thus, we find that the Freemans' counterclaims were not preserved from limitations by Section 16.069.

 The Freemans' counterclaims are also barred by res judicata. Res judicata, or claims preclusion, precludes the relitigation of claims that have been finally adjudicated in a prior action, as well as claims that pertain to the same subject matter that could have been, but were not, litigated in the prior action. *Amstadt v. United States Brass Corp.*, 919 S.W.2d 644 (Tex.1996). A party may not split his cause of action and later assert claims that could have been litigated in the first instance. *See Jeanes v. Henderson*, 688 S.W.2d 100, 103 (Tex.1985). An agreed judgment of dismissal in settlement of a controversy is a judgment on the merits. It too is conclusive, not only on the matters actually raised and litigated, but it is also conclusive on every other matter that could have been litigated and decided as an incident to or essentially connected with the subject matter of the prior litigation. *See Murray v. Murray*, 611 S.W.2d 172, 174 (Tex.App.-El Paso 1981, no writ); *Rhoades v. Prudential Leasing Corp.*, 413 S.W.2d 404, 407 (Tex.Civ.App.-Austin 1967, no writ).

 Although the Freemans are not the same parties who were involved in the earlier condemnation action, their counterclaims are in privity with their parents, J.A. and Lonnie Freeman, the grantors in the deed to Cherokee. Privity exists if the parties share an identity of interest in the basic legal right that is the subject of the litigation. *See Amstadt v. United States Brass Corp., supra.* The Freemans' counterclaims are grounded on alleged acts of fraud committed on their parents, now deceased. As parties to the 1948 condemnation litigation, J.A. and Lonnie Freeman could have challenged in that litigation the right of Cherokee to condemn the property and the purpose for which the condemned land was to be used. They could have

challenged the taking of the land, either by judgment or deed, on the basis of legal and factual fraud, but they did not do so. This aspect of the case is governed by our decision in *Gilbert v. Franklin County Water Dist.*, 520 S.W.2d 503 (Tex.App.-Texarkana 1975, no writ). In that case there was an agreed judgment by which the land was acquired by the condemning authority. The condemnees later challenged the agreed judgment, alleging that the purpose for which the land was taken was not a public use, the condemnor had no right to condemn the land, and the land was worth more than the condemnor paid in the agreed judgment. In affirming the trial court's judgment denying a bill of review, we held that, since the condemnees could have litigated those claims in the original action, the agreed judgment was res judicata as to those claims.

The Freemans also cannot recover on their counterclaim that Cherokee was not entitled to acquire the land by eminent domain, and that it lost its right to the property because some of its use was private and not for public purposes.

At the time it acquired the property, Cherokee was authorized to condemn the land for the purpose of constructing a reservoir and providing water to persons and entities for various uses, including the development of power. *See* TEX.REV.CIV. STAT. ANN. art. 7582 (repealed).[1] Cherokee constructed a lake, and concededly has furnished water and is currently furnishing water to cities and others for the purpose of producing electric power and supplying water for residential and commercial use.

The fact that the development of the lake has been accompanied by a residential development and the sale of lots for residential and recreational use does not render the taking fraudulent or unlawful. Those uses are incidental to the primary purpose of the taking, and they do not interfere or destroy the primary public purpose. *See Ottawa Hunting Ass'n v.*

*State*, 178 Kan. 460, 289 P.2d 754, 759 (1955). Additionally, even if Cherokee abandoned its public use after acquiring the property and initially fulfilling its public purpose, its ownership of the land would not be defeated. *See Jackson v. City of Abilene*, 281 S.W.2d 767 (Tex.Civ. App.-Eastland 1955, writ ref'd n.r.e.).

We find that the summary judgment evidence establishes that Cherokee did not abandon the use of its land for public purposes, and that the private use of the property is only incidental to its public use.

For all of the reasons stated, we affirm the summary judgment.

---

1. Now, see TEX. WATER CODE ANN. §§ 11.034, 11.035(a) (Vernon 1988).