COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

                                                                              )                             

RICHARD D.
JONES,                                          )                    No. 
08-01-00202-CV

                                                                              )

Appellant,                          )                             Appeal from

                                                                              )     

v.                                                                           )                            County Court

                                                                              )

STUBBEMAN, McRAE, SEALY,        
               )                 of Midland County, Texas

LAUGHLIN & BROWDER,
INC., and                )

WILLIAM PENNEBAKER,                                 )                           (TC# P11,674)

                                                                              )

Appellees.                          )

 

O
P I N I O N

 

We
issued our original opinion on April 18, 2002, affirming the summary judgment
granted in favor of Stubbeman, McRae, Sealy, Laughlin
& Browder, Inc. and William Pennebaker
(Stubbeman-Pennebaker).  Appellant, Richard D. Jones subsequently
filed a Motion for Rehearing alleging that the opinion failed to address
several causes of action.  We grant the
motion for rehearing, withdraw our prior opinion, and substitute the following
opinion.  We affirm in part and reverse
in part.

FACTUAL SUMMARY








Robert
Emmett Boyle (Emmett) died in 1980.  He
was survived by wife, Sweetie Boyle, his daughter by a previous marriage,
Patricia Boyle Young, his stepdaughter, Mary Catherine Jones, (Sweetie=s daughter by a previous marriage),
Mary=s
children, Richard Jones and Leigh Jones, and Mary=s
granddaughter, Angela Starrett.  At the time of his death, Emmett=s gross estate (one-half of the
community estate) totaled almost $3 million. 
Emmett disposed of his half of the community estate by will.  He made a minor cash bequest of $2,500 to
Mary and left the reminder of his gross estate in a trust for the benefit of
Patricia with the trust to terminate on July 1, 1989.  Sweetie retained the other half of the
community estate.  Midland National Bank
(the Bank)[1]
served as trustee of the trust.  Although
Sweetie was designated the executor of the will, she suffered from serious
physical and mental problems and could not serve in that capacity.  Consequently, Pennebaker  was appointed executor.  In 1983, as a result of Sweetie=s disability, the family and the Bank
created a management trust to manage Sweetie=s
assets, with the Bank serving as trustee. 
Approximately $1 million in assets were withheld from the
management trust and were instead managed by Mary.  Sweetie was adjudged incompetent in 1984 but
she did not have a guardian of her person or estate appointed until 1988.  At that time, Mary was appointed to serve as
the guardian of both her estate and person. 
In  November
1988, the County Court at Law approved Mary=s
application for a gifting plan for Sweetie=s
heirs.








On
June 14, 1992, Mary died.  On June 17,
the Bank was appointed the successor guardian of Sweetie=s
estate and William Pennebaker of the Stubbeman, McRae, Sealy, Laughlin & Browder
law firm was appointed the successor guardian of her person.  In July 1992, Richard filed a formal
objection to these appointments and requested that the court appoint him to
serve as the guardian of Sweetie=s
estate and person.  On October 27, 1992,
the Bank and Richard resolved the dispute by agreeing that Richard would be
appointed guardian of Sweetie=s
person and the Bank would remain the guardian of her estate.  Both parties submitted their respective
claims for attorney=s fees
and neither party contested the other party=s
claim for attorney=s
fees.  Those fees were paid out of the
guardianship account.

In
May 1993, Richard=s
attorneys proposed another gifting plan to the Bank.  The Bank did not immediately file an
application with the County Court at Law for approval of this plan.  According to Richard, the Bank resisted the
plan before finally submitting it to the County Court at Law for approval.  On December 16, 1994, the court approved the
Bank=s
application to carry out this gifting plan. 
Sweetie died on December 16, 1996, and her will named the Bank as the
executor of her estate.  Because the
disbursements under the gifting plan occurred less than three years before
Sweetie=s death,
these sums were included in her estate. 
The Bank served as executor of the estate and filed an Inventory,
Appraisement, and List of Claims on November 20, 1997.

On
February 24, 1999, the Bank filed a final accounting showing the condition of
the estate.  In the same document, it
filed a petition for declaratory judgment related to its execution of duties as
executor of Sweetie=s
estate.  Among other things, it
specifically sought a declaration that it had no liability to any of the
beneficiaries.  Richard filed a
counterclaim against the Bank, Pennebaker, and the Stubbeman law firm, alleging numerous acts of
mismanagement, misconduct, and breach of fiduciary duty on the part of the
defendants arising out of the management of Sweetie=s
assets and estate prior to and following her death.








The
Stubbeman-Pennebaker defendants filed a motion for
summary judgment based upon the affirmative defenses of res
judicata, collateral estoppel,
and limitations.  The trial court granted
summary judgment in favor of these defendants and severed it from the suit
involving the Bank so that it became a final and appealable
summary judgment.[2]

SUMMARY JUDGMENT

In
Issues One, Two, and Three, Richard challenges the summary judgment granted in
favor of the Stubbeman-Pennebaker defendants.  Because the trial court did not specify the
ground relied upon for its ruling, the summary judgment must be affirmed if any
of the theories advanced is meritorious. 
See State Farm Fire & Casualty Co. v. S.S.,
858 S.W.2d 374, 380 (Tex. 1993).

The Standard of Review

In
a traditional summary judgment proceeding, the standard of review on appeal is
whether the successful movant at the trial level
carried the burden of showing that there is no genuine issue of material fact
and that judgment should be granted as a matter of law.  Lear Siegler,
Inc. v. Perez, 819 S.W.2d 470, 471 (Tex. 1991); Duran v. Furr=s
Supermarkets, Inc., 921 S.W.2d 778, 784 (Tex.App.‑‑El
Paso 1996, writ denied).  Thus,
the question on appeal is not whether the summary judgment proof raises fact
issues as to required elements of the movant=s cause or claim, but whether the
summary judgment proof establishes, as a matter of law, that there is no
genuine issue of material fact as to one or more elements of the movant=s
cause or claim.  Gibbs
v. General Motors Corp., 450 S.W.2d 827, 828 (Tex. 1970); Duran, 921
S.W.2d at 784.  In resolving the
issue of whether the movant has carried this burden,
all evidence favorable to the non‑movant must
be taken as true and all reasonable inferences, including any doubts, must be
resolved in the non‑movant=s favor.  Nixon v. Mr. Property
Management Co., Inc., 690 S.W.2d 546, 548-49 (Tex. 1985); Duran, 921
S.W.2d at 784.








A
defendant who conclusively negates at least one essential element of a
plaintiff=s cause
of action is entitled to summary judgment on that cause of action.  Randall=s Food Markets, Inc. v. Johnson,
891 S.W.2d 640, 644 (Tex. 1995); Provencio
v. Paradigm Media, Inc., 44 S.W.3d 677, 680 (Tex.App.‑-El
Paso 2001, no pet.).  Similarly, a
defendant who conclusively establishes each element of an affirmative defense
is entitled to summary judgment.  Randall=s
Food Markets, 891 S.W.2d at 644; Provencio,
44 S.W.3d at 680.  If the
defendant meets this burden, the plaintiff must then raise a genuine issue of
material fact on the negated element of the cause of action or must produce evidence
raising a genuine issue of material fact in avoidance of the affirmative
defense.  Provencio, 44 S.W.3d at 680;
Milam v. National Ins. Crime Bureau, 989 S.W.2d 126, 130 (Tex.App.‑‑ San Antonio 1999, no pet.).

Statute of Limitations

A
defendant moving for summary judgment on the affirmative defense of limitations
has the burden to conclusively establish that defense.  KPMG Peat Marwick v.
Harrison County Housing Finance Corp., 988 S.W.2d 746, 748 (Tex. 1999).  Thus, the defendant must (1) conclusively
prove when the cause of action accrued, and (2) negate the discovery rule, if
it applies and has been pled or otherwise raised, by proving as a matter of law
that there is no genuine issue of material fact about when the plaintiff discovered,
or in the exercise of reasonable diligence should have discovered, the nature
of its injury.  Id.  If the movant
establishes that the statute of limitations bars the action, the non-movant must then adduce summary judgment proof raising a
fact issue in avoidance of the statute of limitations.  Id.








Richard=s claims based upon breach of fiduciary
duty and fraud are subject to a four-year statute of
limitations.  See Tex.Civ.Prac.&Rem.Code Ann. '
16.004(a)(4)(5)(Vernon Supp. 2002). 
Ordinarily, the statute of limitations begins to run when a particular
cause of action accrues.  S.V. v. R.V., 933 S.W.2d 1, 4 (Tex. 1996); Mitchell
Energy Corp. v. Bartlett, 958 S.W.2d 430, 436 (Tex.App.--Fort
Worth 1997, pet. denied). 
Determining what rule of accrual to apply is a question of law.  Moreno v. Sterling Drug,
Inc., 787 S.W.2d 348, 351 (Tex. 1990); Mitchell Energy, 958 S.W.2d
at 436.  As to the defendant=s burden under the first prong of the
test stated in KPMG Peat Marwick, a cause of action accrues when a
wrongful act causes some legal injury, even if the fact of injury is not
discovered until later.  S.V., 933 S.W.2d at 4; Tanglewood
Terrace, Ltd. v. City of Texarkana, Texas, 996 S.W.2d 330, 336 (Tex.App.--Texarkana 1999, no pet.).

Richard=s claims assert numerous acts of
misconduct, fraud, and breach of fiduciary duties on the part of the Stubbeman-Pennebaker defendants over a time period from
1980 until 1998.[3]
These allegations of misconduct are more easily addressed in two groups:  1980 to 1992, and 1993 to 1998.

1980 - 1992

C                    
The Stubbeman law firm
failed to disclose that at the time Pennebaker
represented the estates of Emmett Boyle and Sweetie Boyle, the law firm
represented the Bank in other matters.  

 

C                    
Pennebaker engaged in
self-dealing and failed to disclose a conflict of interest.  Pennebaker, as
agent and attorney-in-fact for Sweetie Boyle, purchased $28,680 in common stock
in Lovelady, Inc. in June 1983 at a time when Pennebaker
was a member of the Board of Directors of that corporation and while its
principal, Ike Lovelady, was a major client of the Stubbeman
law firm.  The stock was sold in 1985 for
only $458, resulting in a loss of $28,222 to Sweetie Boyle.

 








C                    
Pennebaker permitted
Sweetie Boyle to execute documents as executor of Emmett=s
estate and on her own behalf transferring assets from their estates, even after
the establishment of the Sweetie Boyle Management Trust.  

 

C                    
After Sweetie was adjudged incompetent, Pennebaker transferred property out of Emmett=s estate in a manner contrary to the
will.

 

C                    
Between December 1985 and November 1986,
approximately 13,513 shares of AT&T stock disappeared from the Sweetie
Boyle Management Trust and have not been accounted for by the Bank or by Pennebaker.

 

C                    
From 1984 to 1988, no guardian was appointed for
the person or the estate of Sweetie Boyle.

 

C                    
Pennebaker and the Stubbeman law firm made material misrepresentations to the
probate court and engaged in fraudulent conduct.

 

C                    
Pennebaker and the Stubbeman law firm engaged in a conspiracy to defraud
Richard.

 

C                    
The Bank, Pennebaker,
and the Stubbeman law firm caused unnecessary and
excessive expenses by refusing Richard=s
request to be appointed guardian of Sweetie=s
person and estate, and then by fighting his objection to the appointment of the
Bank and Pennebaker to serve in these capacities.

 

Reports and Records








In
the motion for summary judgment, the Stubbeman-Pennebaker
defendants generally alleged that all of those claims accrued prior to February
16, 1996.  With respect to Richard=s assertion of the discovery rule, they
argued that with the exercise of reasonable diligence, he should have
discovered the nature of his injury prior to that date because he received
regular, comprehensive reports from the Bank which specified all actions taken
with respect to the various trusts, guardianship estate, and other
accounts.  However, Pennebaker
and the Stubbeman law firm did not include any of
these reports in the summary judgment evidence.[4]  Gay Fields, a trust officer with the Bank,
stated in a summary judgment affidavit that trust beneficiaries receive
quarterly and annual reports.  These
reports list all income received in the trust and every expenditure made by the
Bank.  Richard had received monthly,
quarterly, and annual reports pertaining to his trust account as long as Fields
had been in charge of his trust account. 
However, Richard=s
allegations pertained to mismanagement of the estates of his grandparents, not
his own trust account; therefore, the reports he received on his trust account
were irrelevant to this issue.

The
Stubbeman-Pennebaker defendants also relied on the
deposition testimony of Kathy Kennedy, a trust officer with the Bank, to
establish that Richard knew the facts on which his claims were based prior to
February 16, 1996.  According to Kennedy,
the Bank sends out comprehensive reports to its clients on a quarterly and
sometimes monthly basis.  These reports
list the assets and all account transactions during a specified period of
time.  Kennedy=s
testimony does not demonstrate that Richard ever received reports related to
his grandparents=
accounts or estates.  Kennedy also stated
that she spoke with Richard on a regular basis about Atrust
business@ but she
did not detail the content of these conversations or when they occurred.  Therefore, this evidence does not establish
any facts from which it can be determined that Richard discovered the nature of
his injury prior to February 16, 1996.

At
his deposition, Richard produced numerous documents, including various bank
statements, to support his claims, but the record does not indicate when he
came into possession of these documents. 
Additionally, Richard possessed numerous documents related to Sweetie=s estate which he had used in 1993 to
produce the gifting plan.  The record
does not reflect the facts contained within these documents.  Consequently, it cannot be concluded that
Richard knew, or with the exercise of reasonable diligence should have known of
the nature of his injury.  This evidence
does not negate Richard=s
assertion of the discovery rule.








Application of Other Summary Judgment Evidence to
Richard=s Claims

With
respect to the conflict of interest allegations, Richard knew in 1988 that the Stubbeman law firm represented his grandparents= estates and the Bank.  Therefore, Pennebaker
and the Stubbeman law firm conclusively established
that this particular claim is barred by limitations.  Richard also alleged that Pennebaker
engaged in self-dealing.  In 1983, Pennebaker, acting on behalf of Sweetie Boyle pursuant to a
power of attorney, purchased 4,000 shares of Lovelady, Inc. common stock at a
price of $28,680.  Pennebaker
did not disclose that he was a member of the company=s
board of directors.  Pennebaker
did not offer any evidence to negate the discovery rule with respect to this
claim.

Several
of Richard=s
allegations pertain to the improper transfer of property by Pennebaker.  All of these allegations relate to events
occurring in the 1980s.  But Pennebaker did not establish any facts to negate Richard=s assertion of the discovery rule and
thus did not establish his entitlement to summary judgment on this claim.

Richard
also complains that neither the Stubbeman law firm
nor Pennebaker took steps to secure the appointment
of a guardian for Sweetie Boyle during the years 1984 to 1988.  It is undisputed that Richard knew of his
grandmother=s incompetency during these years.  Therefore, the trial court properly
determined that the statute of limitations had run on this claim prior to 1996.








Richard
makes several claims against the Stubbeman-Pennebaker
defendants related to the 1992 guardianship dispute.  These include his claims that the defendants
made material misrepresentations to the probate court, engaged in fraudulent
conduct, and caused unnecessary and excessive expenses.  Richard admitted in his deposition that these
allegations had all been raised in the 1992 litigation.  The evidence conclusively shows that Richard
had knowledge of all pertinent facts related to the guardianship dispute
several years prior to February 1996 since he participated in the litigation
such that these matters are barred by limitations.

In
summary, the statute of limitations had expired prior to the filing of Richard=s suit on the following claims
occurring between 1980 and 1992:  (1) the
Stubbeman law firm and Pennebaker
failed to disclose their relationship; (2) the Stubbeman
law firm and Pennebaker failed to secure appointment
of guardian for Sweetie; and (3) the Stubbeman law
firm and Pennebaker engaged in misconduct and caused
Richard and the various estates to incur unnecessary expenses related to
guardianship dispute in 1992.  Therefore,
the trial court properly granted summary judgment on all these claims.  We will now consider whether the trial court
properly granted summary judgment on the remaining claims occurring between
1980 and 1992.

General Law Governing Res
Judicata

Seeking
to establish both claim preclusion and issue preclusion, the Stubbeman-Pennebaker defendants argued in the trial court
that the settlement of the guardianship dispute completely bars the current
litigation.  Broadly speaking, res judicata is the
generic term for a group of related concepts concerning the conclusive effects
given final judgments.  Barr v. Resolution Trust Corp., 837 S.W.2d 627, 628 (Tex.
1992).  There are two principal
categories within this general doctrine: 
(1) claim preclusion (also known as res
judicata); and (2) issue preclusion (also known
as collateral estoppel).  Barr, 837 S.W.2d at
628.  Res
judicata, or claim preclusion, prevents the relitigation of a claim or cause of action that has been
finally adjudicated, as well as related matters that, with the use of
diligence, should have been litigated in the prior suit.  Id. 
Issue preclusion, or collateral estoppel,
prevents relitigation of particular issues already
resolved in a prior suit.  Id.








Claim Preclusion

Res judicata or
claim preclusion prevents splitting a cause of action.  Id. at 629.  The policies behind the doctrine reflect the
need to bring all litigation to an end, prevent vexatious litigation, maintain
stability of court decisions, promote judicial economy, and prevent double
recovery.  Id.  Res judicata treats a judgment, once rendered, as the full
measure of relief to be accorded between the parties on the same claim or cause
of action.  Ford v. City State Bank of
Palacios, 44 S.W.3d 121, 131 (Tex.App.--Corpus
Christi 2001, no pet.), citing Barr, 837 S.W.2d at 628.

Res judicata
precludes relitigation of claims that have been
finally adjudicated, or that arise out of the same subject matter and that
could have been litigated in the prior action. 
Amstadt v. U.S. Brass Corp., 919
S.W.2d 644, 652 (Tex. 1996), citing Barr, 837 S.W.2d at 628.  It requires proof of the following
elements:  (1) a prior final judgment on
the merits by a court of competent jurisdiction; (2) identity of parties or
those in privity with them; and (3) a second action
based on the same claims as were raised or could have been raised in the first
action.  Amstadt,
919 S.W.2d at 652.








The
remaining claims pertain to Pennebaker=s alleged self-dealing, the improper
transfer of property from the estates of Emmett and Sweetie Boyle, and the loss
of property from the estate of Sweetie Boyle. 
All of these events occurred between 1983 and 1986.  Pennebaker
established all three res judicata elements. 
First, the summary judgment evidence shows that the parties entered into
a Rule 11 agreement in settlement of Richard=s
claims, and pursuant to that agreement, Richard dismissed his request to be
named guardian of Sweetie=s
estate.  An agreed judgment of dismissal
in settlement of a controversy is a judgment on the merits.  Freeman v. Cherokee
Water Co., 11 S.W.3d 480, 483 (Tex.App.‑-Texarkana
2000, pet. denied).  Second, Pennebaker was a party to the suit.  Finally, the summary judgment evidence
established that Richard sought to be appointed guardian of Sweetie=s estate because he wanted to have
access to the records and discover the basis for  Pennebaker=s actions.  This evidence demonstrates that Richard, with
the exercise of diligence, could have discovered and litigated his claims
against Pennebaker in the 1992 litigation.  Therefore, the trial court properly
determined that the remaining claims were barred by res
judicata. 
Given our conclusion, it is unnecessary to address the collateral estoppel argument.

1993 - 1998

Turning
our attention to the claims based upon misconduct occurring between 1993 and
1998,  Richard=s petition alleged that the Stubbeman-Pennebaker defendants participated in the Bank=s breach of its fiduciary duties as
follows:

C                    
The Bank failed to engage in estate tax planning
with respect to Sweetie=s
estate from 1993 until her death in late 1996, and with the assistance of Pennebaker and the Stubbeman law
firm, delayed implementation of the 1994 gifting plan.

 

C                    
In 1993, the Bank transferred oil-producing
properties to Anadarko Petroleum without exploring the value of the
properties.  

 

C                    
The Bank failed to investigate alleged
wrongdoing occurring in the management of Sweetie=s
estate.  

 

C                    
In 1998, the Bank leased half of certain
property in Scurry County, which the Bank manages as trustee for Patricia Boyle
Young, but it failed or refused to lease the other half of the property, which
the Bank holds as executor of Sweetie=s
estate.     

 

C                    
The Bank improperly invested in derivative
investments A[s]ometime before 1994.@

 








The
motion for summary judgment did not attempt to establish when any of these
causes of action accrued but generally alleged that all of Richard=s claims accrued prior to February 16,
1996.  With respect to the first
allegation, the failure to engage in estate tax planning did not cause any
injury until Sweetie=s
death on December 16, 1996.  Therefore,
this claim could not have accrued prior to February 16, 1996.  Assuming the cause of action accrued on the
date of Sweetie=s death,
the statute of limitations would not have expired until December 16, 2000.  Because Richard filed suit within this time
period, summary judgment on the ground of limitations is not proper.

The
allegations pertaining to the failure to investigate wrongdoing in the
management of Sweetie=s
estate would have necessarily occurred after December 16, 1996.  Likewise, the claim pertaining to the Scurry
County lease is based upon conduct occurring in 1998.  Therefore, limitations does
not bar these two claims.      

Richard=s remaining two claims, the 1993
Anadarko Petroleum transaction and the derivative investments made prior to
1994, occurred more than four years prior to the filing of suit.  However, the Stubbeman-Pennebaker
defendants offered no summary judgment evidence to establish when Richard
discovered or should have known the nature of his injury.  Consequently, they did not conclusively prove
their entitlement to summary judgment on the ground of limitations.  We will now consider whether summary judgment
is properly based on res judicata or collateral estoppel.


Res Judicata and Collateral Estoppel

The
Stubbeman-Pennebaker defendants relied exclusively on
the resolution of the 1992 guardianship dispute to argue that Richard=s claims are barred by res judicata and
collateral estoppel. 
All of the remaining claims are based upon new facts arising after the
conclusion of the guardianship dispute. 
Consequently, res judicata does not apply to these claims.  See Marino v. State Farm Fire &
Casualty Insurance Co., 787 S.W.2d 948, 949-50
(Tex. 1990).








The
doctrine of collateral estoppel is used to prevent a
party from relitigating an issue that it previously
litigated and lost.  Quinney Elec., Inc. v. Kondos Entertainment, Inc., 988 S.W.2d 212, 213 (Tex.
1999).  To invoke collateral estoppel successfully, a party must establish the following
elements:  (1) the facts sought to be
litigated in the second action were fully and fairly litigated in the first action;
(2) those facts were essential to the judgment in the first action; and (3) the
parties were cast as adversaries in the first action.  Johnson & Higgins of
Texas, Inc. v. Kenneco Energy, Inc., 962 S.W.2d
507, 521 (Tex. 1998).  Because the
factual basis of these claims arose after the conclusion of the guardianship
dispute, the Stubbeman-Pennebaker defendants are
unable to show that the facts sought to be litigated here were litigated in the
first suit.  Therefore, collateral estoppel does not bar litigation of these facts.  Accordingly, we conclude that summary
judgment should not have been granted on those claims based upon misconduct
occurring between 1993 and 1998.  Issues
One, Two, and Three are sustained.  We
affirm the judgment of the trial court granting summary judgment on the claims
occurring between 1980 and 1992, but reverse the summary judgment and remand
for trial on the remaining claims.

 

 

June 13, 2002

                                                                         


ANN CRAWFORD McCLURE, Justice

 

Before Panel No. 2

Barajas, C.J., McClure, and Chew,
JJ.

 

(Do Not Publish)

 











[1]  In 1989,
Midland National Bank changed its name to First City National Bank of Midland
and then to First City, Texas--Midland, National Association.  In 1993, Texas Commerce Bank--Midland,
National Association merged with Texas Commerce Bank, National Association, Houston, Texas.  Texas
Commerce Bank later merged with Chemical Bank and changed its name to Chase
Bank of Texas, National Association, in 1998. 
Chase Bank brought the petition for declaratory judgment.  Throughout this opinion, we will refer to the
banking entities which served in various capacities simply as Athe Bank.@





[2]  The Bank filed
a separate motion for partial summary judgment which the trial court granted in
the same judgment.  The Bank is not a
party to this appeal.





[3]  Our prior
opinion stated that Richard=s causes of action against these defendants pertained
to misconduct occurring from 1980 until 1992. 
Although the petition clearly states other allegations of misconduct by
the Bank occurring from 1993 through 1998, it did not immediately appear that
those claims also pertained to the Stubbeman- Pennebaker defendants. 
In his motion for rehearing, Richard correctly pointed out that his
petition asserted that the Stubbeman-Pennebaker
defendants participated in the Bank=s breach
of fiduciary duties.





[4]  In support of
this assertion, Pennebaker and the Stubbeman law firm cite to AExhibit
1.@  However, their
summary judgment evidence contains an Appendix and Appendix II but it does not
contain an AExhibit 1@ or any
of the reports.  The Bank attached
numerous reports to its petition for declaratory judgment and labeled it
Exhibit 1 but these reports are not part of the summary judgment evidence.