COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS


ANTHONY AGUILAR and BENITA § 
CASTILLO VILLASENOR, § No. 08-14-00183-CV

§

Appellants, § Appeal from the

§

v. § County Court at Law No. 3

§

of El Paso County, Texas

JACK SINTON, RICHARD RUDNICK, §
and DENNIS HAMMETT, § (TC#2011-2349)

§

Appellees.

## **O P I N I O N**

Anthony Aguilar and Benita Castillo Villasenor appeal from a summary judgment in favor of Jack Sinton, Richard Rudnick, and Dennis Hammett ("the Hammett Group") declaring null and void a "Special Deed" attempting to convey 1.455 acres of real property to the Hammett Group and dismissing their counterclaims. We affirm.

### **BACKGROUND**

In 1989, the Hammett Group sold a 37.53 acre cattle stockyard to Villasenor and her husband, Pio Escamilla. The facilities included cattle pens, a cattle dipping vat, a large underground gasoline storage tank, and a cattle-truck wash facility. Escamilla and Villasenor

subsequently defaulted on the note and the Hammett Group foreclosed on the property, re-acquiring the 37.53 acre stockyard in August 1991.

A few months before the foreclosure, Escamilla and Villasenor had sued alleging the Hammett Group had failed to disclose the presence of the underground gasoline storage tank on the property. In February 1993, Escamilla and Villasenor obtained a judgment against the Hammett Group for approximately $735,000, which included the recovery of their entire $500,000 purchase price and $155,000 for improvements they had made to the property. The Hammett Group hired attorney Mickey Milligan to appeal the judgment and posted a supersedeas bond of $100,000 plus 68.86 acres of land that included the 37.53 acre cattle stockyard. The 68.86 acres were posted through a deed of trust that named Aguilar as the trustee.

In early 1997, Aguilar, as trustee on behalf of Villasenor and Escamilla, foreclosed on the 68.86 acres the Hammett Group had pledged to secure the judgment. At some point after the foreclosure and sale, Escamilla and Villasenor conveyed an interest in the 68.86 acres to Aguilar. Escamilla thereafter conveyed his remaining interest in the property to Villasenor.

In October 1995, before the appeal was concluded, Hammett filed for bankruptcy. Escamilla and Villasenor were active as creditors in the bankruptcy including obtaining a relief from stay to foreclose on the 68.86 acres. In October 1998, after the appeal[1] and foreclosure, Hammett received a discharge from the bankruptcy court of all the remaining claims of his creditors.

In June 1997, Rudnick also declared bankruptcy. During the bankruptcy, Escamilla and Villasenor challenged Rudnick's ability to discharge his debts to them, arguing the judgment was

---

[1] This Court affirmed the judgment in December 1994, and the Supreme Court denied review in 1997.

2

non-dischargeable because Rudnick had committed fraud by failing to disclose the underground gasoline storage tank on the property. Escamilla and Villasenor later filed an amended complaint with the bankruptcy court also alleging that the dipping vat and "contaminated soil" existed on the property. After trial, the bankruptcy court ruled that Rudnick did not commit fraud and that the judgment was dischargeable. Escamilla and Villasenor appealed, and the decision was affirmed in August 2002.

In September 1997, Sinton entered into a settlement agreement with Villasenor and her husband Escamilla concerning the judgment they had recovered in their lawsuit claiming that the Hammett Group had failed to disclose the presence of the underground gasoline storage tank on the property.

Aguilar asserted that at some point he learned from a prospective purchaser of the property about the presence of the cattle dipping vat and a contaminated portion of the property, and that sometime in early 2006, he spoke with a representative of the Texas Commission on Environmental Quality about the contaminated portion. On February 27, 2006, Aguilar and Villasenor signed and filed a "Special Deed" Aguilar had prepared that attempted to convey back to the Hammett Group a 1.455 acre portion of the property containing the contaminated land. Aguilar admittedly prepared the Special Deed without the knowledge or agreement of the Hammett Group.

The Hammett Group sued seeking a declaratory judgment that the Special Deed was null and void. Aguilar and Villasenor filed a counterclaim for breach of contract claiming Sinton had breached his settlement agreement by filing suit, and a counterclaim for fraud claiming that each member of the Hammett Group had concealed the existence of the cattle dipping vat on the

3

property, and contending that they would not have accepted the property as collateral on the supersedeas bond if they had known. The trial court granted the Hammett Group's summary judgment declaring the Special Deed null and void and entering judgment that Aguilar and Villasenor take nothing on their counterclaims.

## DISCUSSION

In their summary judgment motion, the Hammett Group contended the Special Deed was null and void because they neither knew of, nor consented to, the attempted transfer of the 1.455 acres by the Special Deed, and that Aguilar and Villasenor's counterclaims were barred by limitations, by Sinton's settlement agreement, and by the discharges arising from the Hammett and Rudnick bankruptcies.[2] Aguilar and Villasenor argued below the Special Deed was valid and effective because it was delivered to and accepted by Attorney Milligan as the Hammett Group's agent and attorney, that limitations does not bar their fraud counterclaim because it arises out of the same transaction or occurrence as the Hammett Group's claim, that Sinton's settlement agreement did not encompass their fraud claim for concealment of the cattle dipping vat, that Sinton breached the settlement agreement by filing suit, and that the bankruptcy discharges do not act as a bar because their fraud claim was not litigated in the bankruptcy court.

### Standard of Review

In our review, we apply the well-established standards of review for traditional summary judgments. *See Ordonez v. Solorio*, 480 S.W.3d 56, 64 (Tex.App. – El Paso 2015, no pet.). We review the trial court's grant of summary judgment de novo. *Shell Oil Co. v. Writt,* 464 S.W.3d 650, 654 (Tex. 2015); *Merriman v. XTO Energy, Inc.,* 407 S.W.3d 244, 248 (Tex. 2013). To

---

[2] The Hammett Group candidly concedes that although it titled its motion for summary judgment as both a traditional and no-evidence summary judgment motion, the substance of the motion was based solely on traditional grounds.

prevail on a traditional summary judgment motion, a movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Sw. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex. 2002). Although the nonmoving party is not required to marshal its proof in response to a summary judgment motion, it must present countervailing evidence that raises a genuine fact issue on the challenged elements. *Id.* The evidence is viewed in the light most favorable to the nonmovant. *Shell Oil Co.,* 464 S.W.3d at 654; *City of Keller v. Wilson,* 168 S.W.3d 802, 824 (Tex. 2005). In reviewing the record, we indulge every reasonable inference in favor of the nonmovant, and resolve any doubts in favor of the nonmovant. *Shell Oil Co.,* 464 S.W.3d at 654; *Buck v. Palmer,* 381 S.W.3d 525, 527 (Tex. 2012).

## DISCUSSION

### The Trial Court Properly Granted Summary Judgment
### Declaring the Special Deed Null and Void

As the Hammett Group points out, a deed must be both delivered and accepted by the grantee in order for there to be a valid conveyance. *Martin v. Uvalde Sav. & Loan Assoc.,* 773 S.W.2d 808, 812 (Tex.App. – San Antonio 1989, no writ). "[A] deed which is not accepted by the grantee does not convey any interest in the land." *Id.* Under Texas law, "no person can be made a grantee of property against his will." *Taylor v. Sanford*, 108 Tex. 340, 346, 193 S.W. 661, 662 (1917). The Hammett Group contends the evidence is undisputed that it never agreed to accept conveyance of the 1.455 acre tract of contaminated property by the Special Deed. We agree. The affidavits of Sinton and Hammett state that they never saw the 2006 Special Deed until 2011, and never agreed to accept the property, and have not paid taxes on it. Further, Aguilar testified in his deposition that neither Rudnick, Sinton, nor Hammett agreed to have the land conveyed back to them.

Aguilar and Villasenor argue that they created a fact issue on acceptance because Aguilar asserted in his responsive affidavit that he contacted Mickey Milligan, the appeal attorney for the Hammett Group, nine years after the appeal had concluded and discussed conveying the 37.53 acre stockyard back to the Hammett Group, and that after he had prepared and recorded the Special Deed, he delivered a copy to Milligan who said he forwarded it to the members of the Hammett Group. We disagree this evidence was sufficient to create a fact issue on acceptance. Aguilar never stated in his affidavit that the Hammett Group accepted conveyance of the 1.455 acres through Milligan, only that Aguilar prepared and filed the Special Deed and then hand-delivered a copy to Milligan who "accepted the delivery." We conclude this is insufficient to raise a fact issue to dispute Aguilar's admission in his deposition that Rudnick, Sinton, or Hammett never agreed to have the 1.455-acre parcel conveyed to them. Mere delivery is not enough—"conveyance of property is not complete without both delivery by the grantor and acceptance by the grantee." *Panhandle Baptist Found., Inc. v. Clodfelter*, 54 S.W.3d 66, 71 (Tex.App. – Amarillo 2001, no pet.).

We also reject Aguilar and Villasenor's contention that by merely recording the Special Deed they created a presumption, and thus a fact issue, on delivery and acceptance. In those cases recognizing a presumption of acceptance arising from the filing of a deed, "the presumption of acceptance of the conveyance was created because the deed was delivered to the grantee *and recorded by the grantee.*" *Martin*, 773 S.W.2d at 812 (emphasis in original). We agree with the *Martin* court that a presumption of acceptance does not arise when, as here, the grantors both execute and record the deed without the approval of the grantees. *Id.* Because, Aguilar and Villasenor failed to raise a fact issue that the Hammett Group agreed to accept conveyance of the

6

1.455 acre tract of contaminated property by the Special Deed, we conclude the trial court properly granted summary judgment declaring the Special Deed null and void.

### The Trial Court Properly Granted Summary Judgment
### On Aguilar and Villasenor's Counterclaims

Aguilar and Villasenor counterclaimed for breach of the settlement agreement against Sinton for filing the underlying lawsuit, and for fraud against each member of the Hammett Group claiming they concealed the existence of the cattle dipping vat on the property to induce them to accept the deed of trust pledging the 68.86 acres to secure the judgment while on appeal. In moving for summary judgment, the Hammett Group contended the counterclaims were barred by limitations, by the settlement agreement's contractual release of Sinton, and by the bankruptcy discharges of Hammett and Rudnick.

#### *Limitations Bars the Fraud Counterclaim*

Aguilar and Villasenor alleged the Hammett Group's fraudulent nondisclosure occurred before May 26, 1993, when the deed of trust on the 68.86 acres was pledged by the Hammett Group to secure the judgment. They alleged they would not have accepted the deed of trust on the 68.86 acres if the existence of the dipping vat on the property had been disclosed. Fraud has a four-year statute of limitations. TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(4) (West 2002). Aguilar and Villasenor first raised their fraud claim when they filed their counterclaim on September 20, 2011, eighteen years after the deed of trust was pledged.

Aguilar and Villasenor concede that limitations would have barred their fraud claim if it had not been filed as a counterclaim. They contend, without elaboration, that Section 16.069 of the Texas Civil Practice and Remedies Code allowed them to timely raise their fraud allegations in a counterclaim. The Hammett Group correctly points out, however, that Section 16.069 allows a

7

counterclaim otherwise barred by limitations to be filed only if the counterclaim arises from the same transaction or occurrence. TEX. CIV. PRAC. & REM. CODE ANN. § 16.069(a) (West 2015).[3] For Aguilar and Villasenor's fraud counterclaim to arise out of the same transaction or occurrence as required by Section 16.069, the claim must have a logical relationship to the dispute that was involved in the Hammett Group's declaratory judgment action. *See Freeman v. Cherokee Water Co.*, 11 S.W.3d 480, 483 (Tex.App. – Texarkana 2000, pet. denied); *see also Commint Technical Servs., Inc. v. Quickel,* 314 S.W.3d 646, 653 (Tex.App. – Houston [14th Dist.] 2010, no pet.) ("We apply a logical relationship test to determine whether counterclaims arise out of the same transaction or occurrence."). To be logically related, the essential facts on which the counterclaim is based must be significantly and logically relevant to both claims. *Freeman*, 11 S.W.3d at 483.

The Hammett Group's declaratory judgment claim arises from Aguilar and Villasenor's attempted conveyance of 1.455 acres through the Special Deed in 2006. Aguilar and Villasenor's counterclaim for fraud, on the other hand, arises from the 1993 deed of trust that they claim they would not have accepted absent the alleged fraudulent nondisclosure. As the Hammett Group correctly points out, what was not disclosed in connection with the 1993 deed of trust is not significantly and logically relevant to whether the Hammett Group accepted the Special Deed conveyance in 2006. Section 16.069(a) thus does not apply because the fraud counterclaim does not arise from the same transaction or occurrence underlying the Hammett Group's declaratory

---

[3] Section 16.069(a) provides that: "If a counterclaim or cross claim arises out of the same transaction or occurrence that is the basis of an action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitation on the date the party's answer is required."

8

judgment claim. Accordingly, Aguilar and Villasenor's fraud claim was barred by limitations.[4]
*See Freeman*, 11 S.W.3d at 483 (concluding Section 16.069 did not apply because counterclaims based on the alleged fraudulent execution of a deed did not logically relate to plaintiff's declaratory action to construe a fishing rights provision contained in the deed).

### *Sinton Did Not Breach the Settlement Agreement*

Sinton entered into a settlement agreement with Villasenor and her husband Escamilla in September 1997 concerning the judgment they had recovered in their lawsuit claiming that the Hammett Group had failed to disclose the presence of the underground gasoline storage tank on the property. They had sued Sinton in California to collect on the Texas judgment. At the time, Escamilla and Villasenor had already foreclosed on the 68.86 acres, including the cattle stockyard where the dipping vat was located, pursuant to the deed of trust given as part of the supersedeas bond.

As a ground for summary judgment, the Hammett Group argued that the settlement agreement barred any counterclaims against Sinton. Aguilar and Villasenor contend the settlement agreement did not release their fraud claim that the Hammett Group had failed to disclose the existence of the dipping vat and contaminated land. We need not address this argument since we have already concluded that Aguilar and Villasenor's fraud claim was barred by limitations.[5]

---

[4] Because Aguilar and Villasenor brought only a fraud claim against Rudnick and Hammett, and because we have determined the fraud claim is barred by limitations, we need not address whether the fraud claim was also barred by Rudnick and Hammett's bankruptcy discharges. *See* TEX. R. APP. P. 47.1 (court of appeals is required to address only those issues necessary to final disposition of the appeal).

[5] *See* TEX. R. APP. P. 47.1. We also decline to address the issue of Aguilar's standing to assert any counterclaims, which the Hammett Group has raised for the first time on appeal. We recognize that standing may be challenged for the first time on appeal. *See RSL Funding, LLC v. Pippins*, No. 14-0457, 2016 WL 3568134, at **3-4 (Tex. July 1, 2016); *Hagen v. Hagen,* 282 S.W.3d 899, 911 (Tex. 2009). The Texas Supreme Court has noted, however, that where

9

Aguilar and Villasenor also contend, however, that Sinton breached the settlement agreement by filing suit for declaratory judgment, arguing that a condition of the settlement agreement was no party would sue the other party.   The settlement agreement, however, contains no provision barring one party from suing the other, but rather provides only that if a suit is brought raising claims connected with the release, the prevailing party will be entitled to costs and attorney's fees.   In any event, Sinton's declaratory judgment claim concerning the actions Aguilar and Villasenor took in 2006 concerning the Special Deed were not claims "connected with the release" of the lawsuit concerning Sinton's actions of fraudulent nondisclosure in May 1993. Further, Sinton's filing of a lawsuit concerning actions occurring in 2006 could not be a breach of the 1997 settlement agreement, because by its terms, the settlement agreement applied only to matters "occurring or arising on or before the date Plaintiffs and Sinton execute this Release."   A release operates as a complete bar only to a later action based upon matters covered in the release. *McCullough v. Scarbrough, Medlin & Assocs., Inc.*, 435 S.W.3d 871, 885 (Tex.App. – Dallas 2014, pet. denied); *McMahan v. Greenwood*, 108 S.W.3d 467, 478 (Tex.App. – Houston [14th Dist.] 2003, pet. denied).   Filing a lawsuit based on Aguilar and Villasenor's conduct in 2006 could not have been a breach of the settlement agreement that covered only matters occurring before September 13, 1997, the date the settlement agreement was signed.   Accordingly, we

jurisdiction is challenged for the first time on appeal, plaintiffs do not have the same opportunities to replead, direct discovery to, or otherwise address the jurisdictional issue as they have when standing is raised in the trial court.   *See Rusk State Hosp. v. Black,* 392 S.W.3d 88, 96 (Tex. 2012); *see also RSL Funding*, 2016 WL 3568134, at \*4.   Thus, even if standing has not been alleged or shown, but the pleadings and record do not demonstrate an incurable jurisdictional defect, the case can be remanded to the trial court where the plaintiff is entitled to a fair opportunity to develop the record relating to jurisdiction and to replead.   *RSL Funding*, 2016 WL 3568134, at \*4; *Rusk State Hosp.,* 392 S.W.3d at 96-97; *Westbrook v. Penley,* 231 S.W.3d 389, 394-95 (Tex. 2007).   It is plausible that Aguilar could show on remand that he acquired a sufficient interest in the property or was a third-party beneficiary under the settlement agreement as Villasenor's attorney, so as to give him standing.   But, since there will be no remand in this case for Aguilar to make such a showing, there is no need to address his possible lack of standing.

conclude the trial court properly granted summary judgment that Aguilar and Villasenor take nothing on their counterclaims.

## CONCLUSION

We overrule all of the issues on appeal and affirm the trial court's judgment.


STEVEN L. HUGHES, Justice

August 31, 2016

Before McClure, C.J., Rodriguez, and Hughes, JJ.