In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00113-CV


______________________________




DRESSER INDUSTRIES, INC., Appellant



V.



UNDERWRITERS AT LLOYD'S, LONDON, ET AL., Appellees




 


On Appeal from the 333rd Judicial District Court


Harris County, Texas


Trial Court No. 98-44026




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Justice Carter



O P I N I O N



Background

 In 1989, Dresser Industries, Inc. was sued by Parker and Parsley for fraud and negligence in
providing well servicing operations. Dresser defended the federal court suit and was found liable
for both fraud and negligence, and was assessed damages of $185 million. However, the federal
court case was reversed. A similar suit was then filed in state court. The case was settled with
Parker and Parsley for $115 million. By this time, Dresser called on its insurance companies to
provide coverage for the Parker and Parsley claims. Dresser also had an excess insurance policy
with London insurers (excess carrier) and also called on it for indemnity and later sued its insurance
companies and the excess carrier for indemnity. On the eve of trial, all the underlying insurance
companies and the excess carrier settled with Dresser. The underlying insurance companies paid
their limits of liability (except for two insolvent companies), and the excess carrier paid $5.5 million
to Dresser and obtained a release. Dresser now has different claims (asbestos-related) and presented
them to the excess carrier. The excess carrier refused the claims. Dresser filed this action for a
declaratory judgment that the primary insurance was exhausted. Dresser moved for summary
judgment on the doctrine of res judicata, which was denied by the trial court. The excess carrier
moved for summary judgment on the basis that the underlying claims were not covered losses and
did not properly exhaust the underlying insurance coverage, which was granted. The trial court
denied the excess carrier's motion for summary judgment based on the release by Dresser executed
at the conclusion of the previous litigation between these parties. 

 The primary issue in this case is whether Dresser has exhausted its primary coverage in
accordance with the underlying insurance contracts and thus is allowed to recover from the excess
carrier. The trial court agreed with the excess carrier that the underlying claims were not covered
and could not serve to exhaust the underlying coverage so the excess carrier could not be reached. 
Dresser argues that the previous judgment is now res judicata and precludes the carrier from
asserting lack of exhaustion in this case. The excess carrier argues not only that the underlying
claims were for fraud and uncovered, but also that Dresser released the claim now made. Dresser
alternatively argues fact issues remain as to coverage.

Issues

 1. Does res judicata apply, precluding the issue that the underlying claims were not covered,
thereby failing to exhaust the primary insurance?

 2. Did Dresser release the claim now being asserted?

 3. Are there issues of fact to be determined as to whether the underlying claims were covered
losses? 

Summary Judgment Standard of Review

 Summary judgment is proper when the movant establishes that there is no genuine issue of
material fact and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c);
City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979); Baubles & Beads
v. Louis Vuitton, S.A., 766 S.W.2d 377, 379 (Tex. App.-Texarkana 1989, no writ). The question on
appeal is not whether the summary judgment proof raises a fact issue with reference to the essential
elements of the plaintiff's cause of action, but whether the summary judgment proof establishes that
the movant is entitled to summary judgment as a matter of law. Gonzalez v. Mission Am. Ins. Co.,
795 S.W.2d 734, 736 (Tex. 1990). Because the movant bears the burden of proof, all evidence
favorable to the nonmovant is taken as true and all doubts as to the genuine issue of material fact are
resolved in favor of the nonmovant. Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex.
1985).

 When both parties move for summary judgment and the trial court grants one and denies the
other, the reviewing court shall review the summary judgment evidence presented by both sides and
determine all questions presented. Comm'rs Court of Titus County v. Agan, 940 S.W.2d 77, 81 (Tex.
1997).

Res judicata

 Dresser argues that this matter has been resolved. Specifically, when it previously sued the
insurance companies, they defended the suits on the same grounds as in this case, i.e., that the Parker
and Parsley claims grew out of fraud actions, not negligence, and therefore no coverage was
provided. Before trial, that case was settled and a judgment entered dismissing all claims with
prejudice between Dresser and its underlying insurance companies and the excess carrier. The
judgment did not address the issues of exhaustion of the insurance.

 Texas follows the "transactional" approach to res judicata. See Barr v. Resolution Trust
Corp. ex rel. Sunbelt Fed. Sav., 837 S.W.2d 627 (Tex. 1992). Under this approach, a judgment in
an earlier suit "precludes a second action by the parties and their privies not only on matters actually
litigated, but also on causes of action or defenses which arise out of the same subject matter and
which might have been litigated in the first suit." Id. at 630; Getty Oil Co. v. Ins. Co. of N. Am., 845
S.W.2d 794, 798 (Tex. 1992).

 The doctrine of collateral estoppel precludes relitigation of ultimate issues of fact actually
litigated and essential to the judgment in a prior suit. Id. at 801; Tarter v. Metro. Sav. & Loan Ass'n,
744 S.W.2d 926, 927 (Tex. 1988).

 In the previous litigation, Dresser sued its primary carriers, together with the excess carrier,
alleging it had sustained covered losses within the meaning of its policies. These claims arose from
the Parker and Parsley claims against Dresser involving well servicing that Dresser had incurred. 
To recover on the underlying insurance, the policies required an "occurrence," defined as "an
accident or event . . . during the policy period neither expected nor intended from the standpoint of
the insured . . . ." To recover against the excess carrier, Dresser had to prove that the underlying
insurers "have paid or have been held liable to pay the full amount of their respective ultimate net
loss . . . covered by underlying Policy/ies." Dresser alleged that the Parker and Parsley claims were
covered by both the primary and excess carriers. The insurance companies alleged that such claims
were for fraudulent activity of Dresser and therefore not covered by the policies. Those issues were
vigorously contested, but were settled and dismissed before the trial. 

 As a prelude to the present litigation, Dresser has asserted a claim against the excess carrier
for asbestos claims it has incurred. It also asserts that the underlying policies have been exhausted
by the Parker and Parsley claims. Establishing these issues are conditions precedent to the liability
of the excess carrier. Utica Nat'l Ins. Co. v. Fid. & Cas. Co. of New York, 812 S.W.2d 656, 662
(Tex. App.-Dallas 1991, writ denied).

 The doctrine of res judicata precludes relitigation of a claim or cause of action which arises
out of the same subject matter and which might have been litigated in the first suit. Amstadt v.
United States Brass Corp., 919 S.W.2d 644 (Tex. 1996). Res judicata extinguishes all rights of the
plaintiff to remedies against the defendant with respect to all or any part of the transaction or series
of transactions out of which the action arose. Barr, 837 S.W.2d at 630.

 The cases use terms such as barring, preventing, and extinguishing a cause of action by res
judicata. Ingersol-Rand Co. v. Valero Energy Corp., 997 S.W.2d 203, 206-07 (Tex. 1999) (res
judicata prevents parties and their privies from relitigating cause of action that has been finally
adjudicated by competent tribunal); Barr, 837 S.W.2d at 631 (subsequent suit will be barred if it
arises out of same subject matter of previous suit and through the exercise of diligence could have
been litigated in the prior suit); Dennis v. First State Bank of Tex., 989 S.W.2d 22, 26 (Tex.
App.-Fort Worth 1998, no pet.) (final judgment extinguishes the right to bring other suits on the
transaction); Lentworth v. Trahan, 981 S.W.2d 720, 723 (Tex. App.-Houston [1st Dist.] 1998, no
pet.) (dismissal with prejudice would act as a bar to any lawsuit arising out of same facts).

 In this case, Dresser argues that the issue of the underlying coverage being exhausted by
covered claims was resolved by the agreed judgment in the previous litigation between these parties. 
It is true that issue was before the court in the previous case. It is also true that a judgment based on
a settlement is final and may be used to preclude causes of action concerning the same subject matter
as was in the previous case. Freeman v. Cherokee Water Co., 11 S.W.3d 480 (Tex. App.-Texarkana
2000, no pet.). However, Dresser does not want this issue precluded in this case, but rather argues
that the issue has been conclusively found in its favor. Dresser filed this action for a declaration
concerning that very issue. Dresser must prove the exhaustion of underlying insurance as a condition
precedent to recovery against the excess carrier. Utica Nat'l Ins. Co., 812 S.W.2d at 662. What
Dresser is in essence arguing is that the issue of exhaustion of underlying coverage was found in its
favor in the prior case and serves to establish that issue in this case. Dresser is not urging the issue
should be precluded or prevented entirely in this case. If all use of such issue is precluded, Dresser's
declaratory judgment action proof would be incomplete and fail.

 If the court in the previous action had resolved this issue in Dresser's favor, the doctrine of
collateral estoppel would authorize the use of such determination offensively by Dresser. However,
since there was no resolution of this issue, it remains for consideration in this matter.

 Dresser argues that the decision of the excess carrier to settle the previous case "conclusively
established the issue of whether the Parker & Parsley Claim was a covered claim." Freeman, 11
S.W.3d at 483-84.

 The Freeman opinion states that an agreed judgment based on a dismissal in settlement is
a judgment on the merits and is conclusive, not only on matters actually raised and litigated, but it
is also conclusive on every other matter that could have been litigated and decided as an incident to
or essentially connected with the subject matter of the prior litigation. Id. at 483.

 We agree that, if a prior judgment fulfills the requirements of res judicata, such judgment is
conclusive-it bars further litigation of such claim. But that is not to say such judgment conclusively
establishes an individual issue in one party's favor. If res judicata should apply here, the subject
matter would be extinguished. It could not be pursued by either party. We do not find that the
doctrine of res judicata applies to the unresolved issue of whether the Parker and Parsley claims were
covered claims.

 In the first case between these parties, the transaction arose from the claims of Parker and
Parsley from oil well servicing. The relevant issues in that case were (1) whether the claims were
within the underlying policy coverage; and (2) had the underlying insurance carriers paid or become
obligated to pay all of their coverage? If both these issues were proven, Dresser established a cause
of action against the excess carrier. 

 In the instant litigation, Dresser asserts it has incurred other claims for asbestos exposure. 
It likewise alleges that the asbestos claims are covered losses and that, because the underlying
insurance carriers have exhausted their coverage, it can reach the coverage provided by the excess
carrier. 

 To determine if the subject matter in the previous suit and this one are the same for res
judicata purposes requires an examination of the factual basis of the claim or claims in the prior
litigation and an analysis of the factual matters that make up the gist of the complaint, without regard
to the form of action. Barr, 837 S.W.2d at 630. The main concern is whether the cases share the
same nucleus of operative facts. Kenneco Energy, Inc. v. Johnson & Higgins of Tex., Inc., 921
S.W.2d 254, 260 (Tex. App.-Houston [1st Dist.]), modified on other grounds & remanded, 962
S.W.2d 507 (Tex. 1998).

 Barr quoted Restatement of Judgments Section 24(1) that a "transaction" is not equivalent
to a sequence of events; however, the determination is to be made pragmatically "giving weight to
such considerations as whether the facts are related in time, space, origin, or motivation, whether
they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties'
expectations or business understanding or usage." Barr, 837 S.W.2d at 631.

 A "claim" is defined as "the assertion of an existing right; any right to payment or to an
equitable remedy." Black's Law Dictionary 240 (7th ed. 1999); see Vacek Group, Inc. v. Clark,
95 S.W.3d 439, 445 (Tex. App.-Houston [1st Dist.] 2002, no pet. h.).

 In both the Parker and Parsley litigation and in the present litigation, Dresser had one
common issue that had to be proven in order to reach the excess carrier's policy: had the underlying
insurance coverage been exhausted? In order to do so, Dresser also had to prove in each case that
such losses were covered under the policies. In one scenario the facts of coverage involved well
servicing, and in the other it involved asbestos exposure. 

 We find these facts do not invoke the doctrine of res judicata because the causes of action
originate from different facts and different transactions. Clearly, the requirements of collateral
estoppel have not been established, because the issue of exhaustion of the underlying policies was
not fully and fairly litigated to a conclusion, but was settled. 

 In analyzing the factual basis for the underlying claim and the gist of the complaint, we find
that the claim or cause of action that prompted this action-an asbestos claim-does not arise out of
the Parker and Parsley litigation. It does not relate to or concern Parker and Parsley. The outcome
of the Parker and Parsley litigation can only provide proof of a precursor condition that must be met
in order to reach the excess carrier's insurance policies. 

 Therefore, we conclude Dresser is not entitled to rendition of judgment in its favor on this
issue and the trial court did not err by declining to render summary judgment in favor of Dresser.

Release

 We now turn to the issue raised by the excess carrier in its first motion for summary
judgment, which was denied by the trial court. The excess carrier argues Dresser has released its
right to claim that the Parker and Parsley payments served to exhaust the primary carriers' insurance. 
When the previous litigation was settled, Dresser signed a release. By its terms, Dresser released
the insurers from 

 [A]ll claims and other causes of action it may ever have or has had, whether or not
known or asserted, against Underwriters in any way connected with, related to,
concerning or arising out of the Lawsuits or the fracturing or otherwise servicing of
wells in the State of Texas by Dresser (or its subsidiaries) from 1980 through 1988.

 

The "Lawsuits" were defined as the Parker and Parsley litigation. 

 In support of their position that Dresser released any possible claims, the insurers rely heavily
on the most recent pronouncement from the Texas Supreme Court on releases. See Keck, Mahin &
Cate v. Nat'l Union Fire Ins. Co., 20 S.W.3d 692, 697-98 (Tex. 2000). Keck reviewed a release that
contained language releasing a party from "all demands, claims or causes of action of any kind
whatsoever, statutory, at common law or otherwise, now existing or that might arise hereafter,
directly or indirectly attributable to the rendition [of] professional legal services by KMC to Granada
between June 1, 1988 and April 1, 1992." Id. at 696. The court found this to be an adequate
description and allowed the release to stand. 

 The excess carrier argues that the release in this case is a broad-form release sanctioned by
Keck and should be effective here. See id. at 699. (1) 

 The facts in Keck showed that Granada owed KMC a substantial amount for legal services. 
In exchange for KMC's promise to forgive unpaid fees, Granada signed the release quoted above. 
A suit was filed against KMC alleging legal malpractice in the defense of Granada. The plaintiff in
Keck argued the release only applied to unpaid legal fees which were mentioned in the recitals of the
agreement. The court of appeals read the "unpaid fees" mentioned in the recitals as an implied
limitation on the claims released. The Texas Supreme Court found the release was effective as to
malpractice claims, not just unpaid fees. It further stated its decision in Brady did not control the
construction of this release. The Keck release was broader than the one in Brady. Brady did not
forbid a broad-form release, but held the release must "mention" the claim in order to be effective. 
The court concluded the release was effective to forgive all claims against KMC for malpractice
during the period covered in the release. The release specifically mentions "claims . . . attributed to
. . . legal services." The term "legal services" is clear. Such a release comports with Brady by
mentioning the matter released.

 The excess carrier argues this release bars Dresser from using the Parker and Parsley claim
as an element or necessary predicate to this claim. The release limits itself to "all claims and other
causes of action . . . connected with, related to, concerning . . . arising out of the Lawsuits or the
fracturing . . . ." The lawsuits are defined as the Parker and Parsley litigation, which involved
fracturing wells. The present litigation arises out of asbestos claims. None of this claim arises from
or is related to fracturing of wells.

 We have determined that the claim or cause of action in the previous litigation is a distinct
one from that which prompted the present litigation. In the prior litigation, the claim was for
indemnity as a result of well servicing. In the present case, the underlying claim for indemnity arises
from asbestos claims. It is true that both cases involve the same factual question: the exhaustion
of the underlying policies, but that is a condition precedent to recovery on the policy and an issue
that was not litigated, not a claim or cause of action. We hold the release signed in the previous
litigation does not bar these asbestos-originating claims.

 Furthermore, the release does not meet the Brady requirement to "mention" the claim to be
released. 

The Summary Judgment

 When the trial court does not state the specific grounds on which it granted summary
judgment, we will affirm if any of the theories advanced is meritorious. State Farm Fire & Cas. Co.
v. S.S., 858 S.W.2d 374, 380 (Tex. 1993); Alvarado v. Wingfoot Enters., 53 S.W.3d 720, 723 (Tex.
App.-Houston [1st Dist.] 2001, pet. granted). This summary judgment, however, was granted on
the specific ground that the Parker and Parsley claims were not covered losses and could not exhaust
the underlying limits of insurance coverage. 

 The insurers argue they have conclusively shown coverage cannot attach because the
underlying claim against Parker and Parsley was a fraud claim, and under the admitted terms of the
insurance contract, fraud is not covered. The insurers' position is based on the "occurrence" language
found in the contract. It provides that an occurrence is covered and defines that term as something
neither expected nor intended from the standpoint of the insured. Fraud is an intentional tort and
does not constitute an "occurrence." (2) Houston Petroleum Co. v. Highlands Ins. Co., 830 S.W.2d
153, 156 (Tex. App.-Houston [1st Dist.] 1990, writ denied).

 The question is whether the trial court was correctly able to determine as a matter of law that
the Parker and Parsley claim was not a covered loss. As we stated in Utica,

 Whether an insurer in a liability policy is obligated to defend the insured is
a question of law to be decided by the court. State Farm Lloyds v. Kessler, 932
S.W.2d 732, 735 (Tex. App.-Fort Worth 1996, writ denied). In determining whether
the insurer is obligated to defend the insured, we use the eight corners rule. Nat'l
Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex.
1997). The eight corners rule compares the provisions within the four corners of the
policy with the factual allegations contained within the four corners of the plaintiff's
pleadings to determine whether any claim alleged in the pleadings is within the
coverage of the policy. Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines,
Inc., 939 S.W.2d at 141.

Utica Lloyd's of Tex. v. Sitech Eng'g Corp., 38 S.W.3d 260, 263 (Tex. App.-Texarkana 2001, no
pet.). This is not, of course, necessarily equivalent to determining that an insurance claim will
ultimately be bound to indemnify, but only that there are sufficient allegations to require an insurer
to defend the claim.

 The trial court held that the Parker and Parsley claims were not covered losses under the
policy and therefore were incapable of exhausting the underlying coverage, leading to the conclusion
that the excess carrier was not liable. The duty to defend and duty to indemnify are separate issues. 
Farmers Tex. County Mut. Ins. Co. v. Griffin, 955 S.W.2d 81, 82 (Tex. 1997). An insurer may have
a duty to defend but, eventually, no duty to indemnify. For example, a plaintiff pleading both
negligent and intentional conduct may trigger an insurer's duty to defend, but a finding the insured
acted intentionally and not negligently may negate the insurer's duty to indemnify. Id. Under that
scenario, an insurer is not obligated to pay a liability claim until its insured has been adjudicated
legally responsible for a covered claim. See S. County Mut. Ins. Co. v. Ochoa, 19 S.W.3d 452, 460
(Tex. App.-Corpus Christi 2000, no pet.). 

 Griffin held that a duty to indemnify may be determined if the insurer has no duty to defend
and the same reasons that negate the duty to defend likewise negate any possibility the insurer will
ever have a duty to indemnify. Griffin, 955 S.W.2d at 84 (a drive-by shooting can never be
transformed into negligence). 

 When deciding a duty to defend issue, the court must look at the allegations of the petition
and determine if coverage exists. Even if this Court could only look at the allegations in this case
to determine the issues before us, there are sufficient allegations in the petition to raise material
issues of fact. Specifically, the petition in which the Parker and Parsley claims were asserted against
Dresser alleged that Dresser was negligent for, among other things, employing, retaining, and
supervising employees. This is very similar to the allegations in King v. Dallas Fire Insurance Co.,
85 S.W.3d 185 (Tex. 2002), where the plaintiff alleged a defendant employer was negligent in
supervising an employee that committed an intentional tort. 

 However, the court is not constrained to look only at the four corners of the petition when
determining indemnity. The duty to indemnify is determined by the actual facts surrounding the
case. Trinity Universal Ins. Co. v. Cowan, 945 S.W.2d 819, 821 (Tex. 1997). As Dresser is alleging
that all the prerequisites to the excess carrier's liability have been met, resolution of that issue must
depend on the actual facts from the prior litigation. In this case, much evidence is available to assist
the court in determining whether the Parker and Parsley claims were covered by the policies. At one
stage of the Parker and Parsley proceedings, a jury trial was conducted and answers were returned
finding Dresser liable on both fraud and negligence theories. 

 There is no disagreement about whether the primary carriers tendered the full amounts of
their policy limits to settle the Parker and Parsley claims. The excess carrier's insurance contracts
contain language stating that:

 It is expressly agreed that liability shall attach to the Underwriters only after the
Underlying Insurers have paid or have been held liable to pay the full amount of their
respective ultimate net loss liability respect [sic] amounts covered by underlying
Policy/ies for limits as set out in the schedule attached to this Policy and the
Underwriters shall then be liable to pay only the excess thereof up to . . . . 

 The fact that each one of the (solvent) primary insurers settled for the full amount of their
coverages is summary judgment evidence that at least raises a fact issue that primary insurance
coverage was exhausted. The additional fact that the excess carrier paid part of its excess coverage
to Dresser for those same claims is further support for Dresser's allegation that the primary coverage
was exhausted for covered claims. All of those matters are set out specifically in Dresser's petition
seeking declaratory relief. For those reasons, even if we agreed fully with the insurer's analysis of
the contract language, we could not agree the trial court correctly concluded as a matter of law the
primary policies had not been exhausted.

 Further, the multitude of documents presented by insurers show that the insurers are now
taking the position that, in 1994, they were not legally obligated to Dresser-even though they did pay
$5.5 million on the claim. The letters and proposed agreements that were circulating during the
process of settlement show a difference of opinion about whether underlying coverage was
exhausted. In addition, even though the underlying Parker and Parsley pleadings were mainly
directed at allegations their injuries were caused by local managers with the full assistance and
knowledge of upper echelon management, they also made alternative allegations their injuries were
caused by the negligence of management. 

 We find that fact issues exist with regard to coverage and exhaustion of the primary insurance
policies. 

 The insurers further ask that, on remand, we give specific instructions to the trial court to
apportion the Parker and Parsley settlement between covered and uncovered claims. This issue was
not raised in a motion for summary judgment and cannot now be considered. Tex. R. Civ. P.
166a(c); McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 341 (Tex. 1993). 

 The insurer also urges this Court, in the event of remand, to authorize presentation of
additional affirmative offenses. We are confident all proper issues will be addressed by the trial
court.

 We reverse the summary judgment and remand to the trial court for further proceedings
consistent with this opinion.



 Jack Carter

 Justice


Date Submitted: February 20, 2003

Date Decided: April 29, 2003

1. In reaching this decision, the Texas Supreme Court expanded its earlier holding in Victoria
Bank & Trust Co. v. Brady, 811 S.W.2d 931 (Tex. 1991), which required that general categorical
release clauses should be narrowly construed and that, in order to effectively release a claim, the
releasing instrument must "mention" the claim to be released.
2. "Occurrence" means 


 [A]n accident or event, including continuous or repeated exposure to conditions,
which results in Personal Injury, Property Damage, Malpractice Injury, Advertising
Liability and/or Employee Benefits injury during the policy period neither expected
nor intended from the standpoint of the insured (Personal Injury or Property Damage
committed to prevent or eliminate danger or to protect person(s) or property shall be
deemed neither expected nor intended from the standpoint of the insured), and
providing that all loss covered under this policy arising out of exposure to
substantially the same general conditions shall be considered as arising out of one
occurrence; . . . .